UNITED STATES FID. & GUAR. CO. *v.* SMITH.

Division A. May 7, 1951.

No. 37868 (52 So. (2d) 351)

574

**Nichols & Huff,** for appellant.

Deavours & Hilbun, for appellee.

**Kyle, J.**

This is an appeal by the United States Fidelity and Guaranty Company, the insurance carrier, from a judgment of the circuit court of Smith County awarding compensation to Rosalie Clayton Smith as surviving

widow of George Harrison Smith, deceased, under the provisions of the Workmen's Compensation Act, Chapter 354, Laws of 1948.

George Harrison Smith, colored, an employee of H. Tanner, doing business as Tanner Produce Company, was instantly killed in a truck accident on March 7, 1949, on State Highway No. 20, near Mize. He was 27 years of age at the time of his death.

The appellee, Rosalie Clayton Smith, filed her claim as surviving widow of the deceased for compensation on account of the accidental death of the deceased. The Compensation Commission disallowed the claim on the ground that the appellee was not the surviving widow of the deceased, as defined in the Workmen's Compensation Act, and from the order of the commission disallowing her claim the appellee appealed the case to the circuit court. The circuit court reversed the order of the commission, and entered a finding of its own that Rosalie Clayton Smith was the lawful wife of George Harrison Smith at the time of his death, that she was living apart from her said husband for justifiable cause, and that she was entitled to the benefits provided for the widow of the deceased under Section 9(c) of the Workmen's Compensation Act; and the circuit court entered a judgment in favor of the appellee for the amount shown to be due her under the provisions of the act, and directed that the same be paid to her in a lump sum as provided in Section 13(j) of said act. The court also allowed to the attorneys representing the appellee a fee for legal services rendered by them in a sum equal to 20 per cent of the amount of the award, and the court ordered that the attorneys' fee be paid directly to the attorneys out of the amount of the lump sum award. From that judgment the insurance carrier has appealed to this Court.

The appellant contends that Rosalie Clayton Smith is not the widow of George Harrison Smith and is not entitled to the benefits provided for the widow of a deceased employee under Section 9(c) of the Workmen's

Compensation Act for the alleged reason that George had contracted a common-law marriage with Blanche Jones prior to the ceremonial marriage with Rosalie Clayton, and that his common-law marriage had never been dissolved by a decree of divorce.

George Harrison Smith came to the city of Laurel in 1938 from the state of Alabama. He was 17 years of age at that time. Soon after coming to Laurel he became acquainted with a woman known as Mattie Harris, who was many years older than he, and began to maintain illicit relations with her. A year or two later he formed a somewhat more constant alliance with a girl by the name of Blanche Jones, who was living in the home of one R. E. Raiford. George lived with Blanche most of the time for the next two or three years, and a child was born to them on May 24, 1941. The child was named George Harrison Smith, Jr., and was recognized by George as his child. George and Blanche separated when the child was about two years old, and on February 23, 1944, George entered into a ceremonial marriage with Rosalie Clayton, the appellee. George and Rosalie lived together as man and wife about three weeks. George then resumed his attentions to Mattie Harris, and Rosalie returned to her mother's house. George thereafter lived with Mattie until he entered into a second ceremonial marriage with one Mattie Mae Walters on December 17, 1945. Prior to his marriage to Mattie Mae, George informed Mattie Mae that he was married to Rosalie Clayton Smith, and that he was taking steps to obtain a divorce from Rosalie. But for some reason George did not obtain a divorce from Rosalie, and Mattie Mae married George with full knowledge of the fact that he had not obtained a divorce from Rosalie. George continued to live with Mattie Mae until the time of his death.

Blanche Jones Smith in the meantime had entered into a ceremonial marriage with one Horace Butler in Marion County. Blanche made no attempt to obtain a

divorce from George prior to her marriage to Horace Butler.

It is readily admitted that the illicit relationship between George Harrison Smith and Mattie Harris possessed none of the attributes of a common-law marriage. It is also admitted that the ceremonial marriage between George and Mattie Mae Walters was void for the reason that George had not procured a divorce from Rosalie at the time of his marriage to Mattie Mae. Rosalie Clayton had never married prior to her ceremonial marriage to George, and no ceremonial marriage had taken place between George and Blanche. Rosalie's marriage to George was therefore valid, unless the living together and cohabitation of George and Blanche constituted a common-law marriage. The main question to be determined on this appeal is therefore the question whether the relationship that existed between George Harrison Smith and Blanche Jones Smith constituted a common-law marriage.

 As pointed out in the case of Sims v. Sims, 122 Miss. 745, 85 So. 73, 74, there are two methods by which the bonds of matrimony may be entered into in this State: "The first of these methods is a ceremonial marriage solemnized pursuant to a license obtained therefor, which marriage will be valid and binding, although not followed by cohabitation. The second is that prescribed by the common law, which is an agreement between a man and woman to then and there become husband and wife followed by cohabitation." The existence of a common-law marriage may be shown by the acts and timely declaration of the parties. But "A claim of common-law marriage is regarded with suspicion and will be closely scrutinized. Thus, in order to establish a common-law marriage, all the essential elements of such a relationship . . . must be shown by clear, consistent, and convincing evidence, especially must all the essential elements of such relationship be shown when one of the

parties is dead''. 55 C. J. S., Marriage, Section 45, page 911.

In a case ▇▇ ▇ where an alleged prior common-law marriage is interposed for the purpose of having the court declare invalid a ceremonial marriage, there is a strong presumption in favor of the validity of the ceremonial marriage as against the prior alleged common-law marriage. Whitman v. Whitman, 206 Miss. 838, 41 So. (2d) 22. In 55 C. J. S., Marriage, Sec. 43, pages 893-894, it is said, ▇▇ ▇ ''In the case of conflicting marriages of the same spouse, the presumption of validity operates in favor of the second marriage. Accordingly the party attacking the validity of such second marriage has the burden of proving such invalidity, even though it involves the proving of a negative; and the burden of showing a valid prior marriage is on the party asserting it.''

▇▇ ''The presumption of marriage from cohabitation and reputation is rebutted or overcome by proof of a subsequent ceremonial or actual marriage, since the presumption of the validity of such marriage is stronger than the presumption of the previous marriage from cohabitation and reputation, especially where the ceremonial or actual marriage occurs after a long separation following the cohabitation and reputation relied upon to establish the competing marriage.'' 35 Am. Jur. Marriage, Par. 199, page 311.

In the early case of Powell v. Powell, Adm'r, 27 Miss. 783, the Court said: ''The law favors marriage, and when once solemnized according to the forms of law, will not declare its nullity upon anything less than clear and certain testimony, especially after it has been dissolved by the death of one of the parties.''

With these principles of law in mind, we shall now proceed to an examination of the facts disclosed by the record in the case we now have before us.

The testimony shows that Blanche Jones and George Harrison Smith lived together approximately three years. The proof tending to show a common-law marriage be-

tween George and Blanche consists mainly of the following facts: That they were living together in the home of Milton Pettus in May 1941 when their child was born; that the birth certificate showed that the child was named George Harrison Smith, Jr., that his father was George Harrison Smith, and that his mother was Blanche Smith, and the certificate showed that the mother was married; that George and Blanche lived together until the child was about two years old; and that they sometimes told their landlady that they were married. This testimony, when taken in connection with the other testimony in the record, is in our opinion, insufficient to show a common-law marriage.

The proof shows that Blanche and George had been living together as paramours, a year or more before the child was born, and there is no evidence that the parties claimed to be husband and wife until after the child was born. The only suggestion that they ever claimed to be husband and wife after the child was born, other than that contained in the birth certificate, is contained in the testimony of two or three householders from whom they rented living quarters. There is abundant proof that George paid the rent and bought the groceries for Blanche and the baby, and Blanche, after the baby was born, called herself Blanche Smith. But the decisive testimony which definitely refutes the claim that there was a common-law marriage between them is that after George and Blanche separated each of them contracted a ceremonial marriage, and neither of them deemed it necessary to procure a divorce before contracting a ceremonial marriage. And in addition to this, Blanche herself testified on the hearing that she and George were never married; that she never intended to marry George; that George asked her to marry him before the baby was born and after the baby was born, and that she refused to marry him; that she did not consider George as her husband, and that George did not consider her as his wife; that she did not want to be George's wife; and that she and George did not hold

themselves out to the community and the public as being husband and wife; that they simply lived together because they wanted to live together. George's mother also testified on the hearing that so far as she knew George and Blanche were never married, that "they just lived together."

In view of these facts we think that the evidence fails to show a common-law marriage between George and Blanche.

 It therefore follows that the ceremonial marriage of George and Rosalie Clayton was a valid marriage and that Rosalie Clayton Smith was the lawful wife of George Harrison Smith at the time of his death.

We think that the learned circuit judge was also correct in his finding that the said Rosalie Clayton Smith was living apart from her said husband for justifiable cause at the time of his death, and that she, as surviving widow of the deseased, was entitled to the immediate lump sum payment of $100, to be paid to the surviving widow, under Section 9(a) of the workmen's Compensation Act, and the other compensation benefits to be paid to the surviving widow under Section 9(c) of the Act.

The circuit judge found that the average weekly wage of George Harrison Smith during the year preceding his death was $24.90, and that 35 per cent of that amount was $8.73, which was the amount of the weekly payments that Rosalie Clayton Smith was entitled to receive for a period of 450 weeks. The circuit judge also found that it was for the best interest of Rosalie Clayton Smith that the compensation to which she was entitled be paid to her in a lump sum, and that her attorneys should be allowed a fee of 20 per cent of the amount awarded to her; and the circuit judge ordered that the appellee do have and recover of and from the employer and the insurance carrier the sum of $2,744, and that her attorneys do have and recover of and from the insurance carrier the sum of $685.99. The appellee and her attorneys were thereby awarded the total sum of $3,429.99.

The appellants' attorneys in their assignment of errors and in their brief contend that the court erred in computing the amount of the award which was to be paid in the lump sum settlement.

██ ██ Section 13(j), Chapter 354, Laws of 1948, is as follows: "Whenever the commission determines that it is for the best interests of a person entitled to compensation, the liability of the employer for compensation, or any part thereof as determined by the commission, may be discharged by the payment of a lump sum equal to the present value of future compensation payments computed, computed at four per centum (4%) true discount compounded annually. The probability of the death of the injured employee or other person entitled to compensation before the expiration of the period during which he is entitled to compensation shall be determined in accordance with the American Experience Table of Mortality, and the probability of the remarriage of the surviving wife shall be determined in accordance with the remarriage tables of the Dutch Royal Insurance Institution. The probability of the happening of any other contingency affecting the amount or duration of the compensation shall be disregarded."

The Court, in reviewing the record on this appeal, found that the amount of the lump sum payment to be made to the appellee as provided in the order of the circuit court, had not been computed correctly in that the probability of the remarriage of the appellee before the expiration of the 450-week period during which she was entitled to compensation had not been taken into account in determining the amount of the lump sum settlement, as provided for in the above mentioned Section 13(j). The Court therefore submitted a memorandum request to the attorneys for the respective parties asking that a stipulation be filed covering the amount of the lump sum payments to be made to the appellee and her attorneys. A proper stipulation has been filed, in response to the above mentioned request, and it has been agreed that the correct

amount of the lump sum compensation to be paid to the appellee and her attorneys is $2,265.95, to which amount there should be added the lump sum payment of $100 specifically provided for in Section 9(a).

In view of the conclusions hereinabove expressed, the judgment of the circuit court awarding compensation to Rosalie Clayton Smith as surviving widow of George Harrison Smith, deceased, and providing for the payment of same in a lump sum, will be affirmed as to the liability of the insurance carrier, but the amount of the lump sum compensation payment will be reduced from $3,329.99 to $2,265.99 to which there shall be added the $100 to be paid to her under Section 9(a) of the Workmen's Compensation Act; and 20 per cent of the above amount shall be paid to appellee's attorneys as compensation for their services, and the remaining 80 per cent shall be paid to the appellee. And the judgment of the lower court, as thus modified and corrected, will be affirmed.

Judgment corrected as to amount and affirmed.