RIDLEY *v.* COMPTON, et ux.

Dec. 1, 1952

No. 38490          10 Adv. S. 30          61 So. 2d 341

*Howard Dyer, Jr.,* and *Joseph E. Wroten,* for appellant.

*Price & McIlwain,* for appellees.

KYLE, J.

The appellees, Alex Compton and Ruth M. Compton, husband and wife, as plaintiffs, filed their affidavit and complaint in the County Court of Washington County against the appellant, Sullivan Ridley, as defendant, seeking to obtain possession of a small parcel of land in the City of Greenville, with the dwelling house located thereon, which the plaintiffs alleged was being unlawfully withheld from them by the defendant. The plaintiffs alleged in their declaration that they had acquired title to the property by deed of conveyance from Sally Kidd dated September 6, 1951, that they were entitled to possession of the property under their deed, and that the defendant was wrongfully depriving them of possession. The defendant answered the declaration and in his answer said that he was not guilty of the wrong complained of.

Upon the trial of the case in the county court, the defendant sought to prove, in defense of the action, that he was the common law husband of Sally Kidd; that the property described in the plaintiffs' declaration was the homestead property of Sally Kidd at the time the above mentioned deed was executed, and that he had a homestead interest in the property; that he had not signed the deed of conveyance, and that the deed was therefore void; and that the plaintiffs were not entitled to the possession of the property. The case was submitted to a jury under proper instructions of the court and the jury returned a verdict in favor of the plaintiffs. The court thereupon entered a judgment for the plaintiffs, and directed that a writ be issued to the sheriff commanding him to put the plaintiffs in possession of the property. From that judgment the defendant prosecuted an appeal to the circuit court. The circuit court affirmed the judg-

ment of the county court, and the case is now before us on appeal from that judgment.

The appellant's attorneys argue only one point on this appeal, and that is that the court erred in refusing to grant the instruction for a directed verdict requested by the defendant. It is therefore necessary that we state briefly the essential elements of a common law marriage as set forth in the decisions of our own Court, and that we then examine the testimony for the purpose of determining whether the instruction should have been granted.

(Hn 1) Common law marriages are recognized as valid in this State. Sims v. Sims, 122 Miss. 745, 85 So. 73; Sykes v. Sykes, 162 Miss. 487, 139 So. 853; Jones, et al. v. Lamensdorf, et al., 175 Miss. 565, 167 So. 624.

(Hn 2) The matrimonial relation may be created by consent of parties, per verba de presenti, followed by cohabitation thereunder, and its existence may be shown by the acts and declarations of the parties. Floyd, Executor, et al. v. Calvert, 53 Miss. 37. (Hn 3) But a claim of common law marriage is regarded with suspicion and will be closely scrutinized, and in order to establish a common law marriage, all the essential elements of such a relationship must be shown to exist. 55 C. J. S., p. 911, Marriage, par. 45 b; U. S. Fid. & Guar. Co. v. Smith, 211 Miss. 573, 52 So. 2d 351.

(Hn 4) "The word 'cohabitation' as used in the marriage laws means the public assumption by a man and a woman of the marital relation, and dwelling together as such, thereby holding themselves out to the public as being man and wife." Hunt v. Hunt, 172 Miss. 732, 161 So. 119. And, as stated by the Court in the case of Barton v. State, 165 Miss. 355, 143 So. 861, (Hn 5) "It is, of course, among the essentials of a valid common law marriage that both parties must intend in good faith to live together in the relation of husband and wife, and that the union shall be permanent and exclusive of all others.

38 C. J. 1317, 1318. The agreement between the parties must be unequivocal and free from any reservations, mental or otherwise, to the full extent that, when consummated by cohabitation, nothing less than a decree of divorce pronounced by a court of competent jurisdiction can dissolve the relation.''

The chief witnesses for the plaintiffs were Ruth Compton, who was one of the plaintiffs, and Sally Kidd, the grantor in the deed to the plaintiffs. Ruth Compton testified that she had known Sally Kidd since 1925; that Sally's husband died in 1930; and that Sullivan Ridley, the defendant, had lived in the house with Sally most of the time since 1935, but had occupied a separate room in the house; that Sally, who was very old at the time of the trial, had been living with her brother in Issaquena County for more than a year prior to the date of the trial. Ruth testified further that Ridley was living in Sally's house as a roomer; that he had never claimed Sally as a common law wife, and that he had always said that Sally was too old for him; that she had never seen or heard anything that indicated that Ridley and Sally were husband and wife.

Sally testified that Ridley was not her husband, and had never been her husband, and that she had never agreed to be his wife. She stated that her name was Sally Kidd, and that her name appeared on the church rolls and on the records of the country welfare department as Sally Kidd, and that the insurance policy which she owned was issued in the name of Sally Kidd. She stated that she had worked for her own living, washing, ironing, and hoeing and picking cotton; and she denied that Ridley had furnished money for her support. She said that Ridley lived in the house as a roomer but paid no rent. Upon cross-examination she admitted that she had slept with Ridley sometimes, but denied that she had slept with him as his wife.

A. T. Phillips testified that Ridley had told him that "Sally is nothing to me, I just room there." Beatrice Garner testified that Sally had gone by no other name than that of Sally Kidd; that Ridley and Sally had told her that they were not husband and wife; that Ridley had told her that Sally was nothing to him, that she was too old for him. Mary Collins testified that Ridley had told her that Sally was not his wife, and that he was just rooming at her house. Inez Compton testified that Ridley had said to her "You know I'm not her husband." Three other witnesses for the plaintiff testified that they had known Ridley and Sally both for many years and that they had never seen any indication that Ridley and Sally were husband and wife, and that Sally never used any other name than that of Sally Kidd. The county welfare agent stated that Ridley had told her in Sally's presence that he was a roomer in the house.

Sullivan Ridley testified that he was the common law husband of Sally, and had lived with her as her common law husband; that he had paid for food and other necessary supplies for Sally, and had paid her medical expenses and the premium on her insurance policy. He testified that he purchased several $25 war bonds in 1943; while he was working in Texas, and had the bonds made payable to him or "Mrs. Sallie Ridley." He stated that he had cashed all of the bonds except one to pay Sally's doctor's bills when she was sick. He admitted that Sally had never told him to have her name placed on the war bonds. He stated that he had never been married before. He was asked whether he was sure that he had never been married. His reply was, "No, you can look all over Arkansas, Tennessee and Mississippi, everywhere, you won't find no license for me to marry nobody." He admitted that he did not tell the county welfare agent that he and Sally were husband and wife, and that when he filed his application for social security he did not declare Sally as his wife. He admitted that

Sally went by the name of "Sally Kidd." Lucy Redd, a witness for the defendant, testified that she had seen Sally and Ridley in bed together and that she always considered them to be husband and wife. Simuel Thomas testified that Ridley had told him that Sally was his wife.

(Hn 6) We think that under the conflicting evidence the case was properly submitted to the jury for its decision, and that the jury was amply justified in concluding that the evidence was insufficient to establish a common law marriage between the defendant and Sally Kidd. It is admitted that the instructions which the court granted correctly stated the principles of law applicable to the issue presented by the pleadings and the proof. There was no error in the court's refusal to grant the peremptory instruction requested by the defendant, and the judgment of the lower court is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Alexander, Hall* and *Holmes, JJ.,* concur.