UNITED TIMBER & LUMBER CO., et al. *v.* ALLEGED DEPENDENTS OF ALEX HILL, DECEASED

No. 39890          January 23, 1956          84 So. 2d 921

542

*Dent, Ward & Martin,* Vicksburg, for appellants.

*Teller & Biedenharn,* Vicksburg, for appellee, *Selena Hill.*

*Frank E. Shanahan, Jr.,* Vicksburg, for appellee, *Ada Hill.*

GILLESPIE, J.

The opinion in Hill v. United Timber & Lumber Company, 68 So. 2d 420, is referred to for a statement of the facts developed in this case up to that time. Pursuant to the opinion in Hill v. United Timber & Lumber Company, 73 So. 2d 247, the case was remanded to the Workmen's Compensation Commission as therein provided.

On the hearing on remand, it was stipulated by all parties that the matter be heard on the record as it existed in the Supreme Court (Hill v. United, etc., 68 So. 2d 420), together with all stipulations forming a part thereof, briefs and other papers filed therewith, and with the right of either party to the case to present

testimony of any witness not heard at the time of the original hearing.

Only one witness testified on remand—Ike Moore, who was ceremoniously married to Ada Hill on December 3, 1921. He testified that he married Ada, then known as Rosa Mae Sampson, when he was about eighteen years old, and Ada was about thirteen or fourteen; that neither he nor Ada had been previously married; that they had one child named Leonard, whose nickname was "Red"; that he and Ada separated when the child was less than a year old; that neither he nor Ada ever got a divorce that he knew of; that three or four years ago, he met Ada in Vicksburg. Ike also gave an account of his whereabouts since the separation.

The attorney-referee and the Commission denied and dismissed the claims of both Selena Hill and Ada Hill, and the employer and its insurance carrier were ordered to pay to the Workmen's Compensation Commission $500 as required by Section 31 (b) of the Act (Sec. 6998-37 (b), Code of 1942).

On appeal to the circuit court, the Commission was reversed and Selena was adjudged the dependent widow of Alex Hill and compensation was ordered paid to her. The employer and its carrier appealed to this Court, and we review the rival claims of both Ada and Selena in the light of the facts as they now exist.

We first consider Ada's claim. She contends that Ike Moore was not a competent witness under Section 1689, Code of 1942, because the record fails to show that either Ike or Ada consented that Ike be a witness in the case; that since Ike's testimony was not competent, there has been no change affecting Ada since the opinion was rendered in Hill v. United, etc., 68 So. 2d 420. A sufficient answer to this contention is that no objection was made by Ada to the testimony of Ike Moore, and since no objection was made, she, in effect, consented that Ike testify. Huff v. State, 176 Miss. 443,

169 So. 839. ▆▆▆ But Ada would have been in no better position if she had objected; for by so doing she would have been required to admit that Ike was alive and was her husband—the sole issue as far as she was concerned. The law would not countenance a litgant saying in one breath, "this witness is Ike Moore, my husband, I do not consent for him to testify for that reason," and in the next breath say, "Ike Moore is dead; I have no living husband by that name." Such could not have been the legislative intent in adopting the statute.

It is contended by Ada that she qualifies as the widow of Alex Hill under the provisions of Code Section 6998-02 (14), which provides in part as follows: ". . . The term 'widow' shall likewise include one not a legal wife, but who had entered into a ceremonial marriage with the decedent at least one year prior to his death, and who on the date of the decedent's death stood in the relationship of a wife, provided there was no living legal spouse who had protected her rights for support by affirmative action as hereinabove required. The term 'widow' or 'widower' as contemplated in this act shall not apply to any person who has since his or her separation from decedent entered into a ceremonial marriage or lived in open adultery with another."

▆▆▆ The quoted provisions of the statute represents the legislative attempt to protect the putative widow who has entered into a ceremonial marriage with decedent and who stood in the relationship of a wife at the time of his death. Pathfinder Coach Division of Superior Coach Corp. v. Cottrell, 216 Miss. 358, 62 So. 2d. 383. Ada cannot qualify under the quoted part of the statute because she was not one "who on the date of decedent's death stood in the relationship of a wife." Whether Ada stood in the relationship of a wife depends on whether the state of affairs existing between Alex and Ada was substantially similar to that relation-

ship which exists between husband and wife. This would include living together under the same roof absent some exigency of their affairs requiring them to live apart, and holding themselves out to the public as man and wife. They were not living together under the same roof and there was no occasion for them to live apart except the desire of one or both. They did not hold themselves out to the public as man and wife. Alex was living under another roof with Selena and was calling her his wife. The facts in reference to this matter are stated in the former opinion. Such support as Alex was giving to Ada and his frequent visits to her did not characterize their relationship as that of man and wife. Whether Alex's gifts to Ada of food and wood and his visits to her house were Ada's reward for past or present favors is immaterial; but whatever else may be said of their relationship it was not substantially similar to that of husband and wife.

■■ The Commission necessarily found, in denying her claim, that Ada was not the widow within the meaning of the statute quoted above, and such finding was consistent with the overwhelming weight of the evidence.

■■ It is urged on Ada's behalf that while there is proof that Ike Moore and Ada were married prior to the time of Ada's ceremonial marriage with Alex Hill, and neither has been granted a divorce, and that Ike is still living, that nevertheless the presumption in favor of the second marriage has not been fully rebutted because there was no proof that the first marriage was not annulled. ■■ The term "divorce", confined strictly to the legal sense of the term, means the legal dissolution of a lawful union for a cause arising after marriage, while an annulment proceeding is one maintained upon the theory that for some reason existing at the time of a pretended marriage, no valid marriage ever existed. In the common wider use the term "divorce" includes the dissolution of a valid marriage, the for-

mal separation of married persons, and the annulment of a marriage void from the beginning. The word divorce is sometimes used in statutes to include nullity and annulment. Both actions operate on the same status or res. Several of the grounds for divorce in our own divorce statutes are also grounds for annulment. 13 Words & Phrases, Divorce, pages 101 et seq.; Webster's New International Dictionary, 2d edition.

It has now been abundantly proven that Ike Moore and Ada were ceremoniously married prior to the ceremonial marriage between Ada and Alex Hill; that ''there has never been any divorce proceedings between them;'' and that Ike Moore was living at the time of the marriage between Ada and Alex and is still living. This proof is sufficient to rebut the presumptions existing in favor of the second ceremonial marriage between Ada and Alex Hill.

■■ The sole basis for the judgment in favor of Ada as the case stood on the former appeal (68 So. 2d 420) was the presumption that Ike Moore was dead. Now it has been conclusively shown that Ike Moore is alive; wherefore, the presumption disappears.

■■ We next consider Selena's claim. Upon proof being made that Ike Moore was alive, Alex's impediment to a lawful marriage to Selena was removed. The only remaining question as to Selena's claim to compensation is whether the relationship between Alex and Selena met the requirements of a common law marriage; and we hold that they did not.

Selena began living with Will Buck many years before she met Alex Hill, and after Selena had a child by Will Buck, she and Buck were ceremoniously married ''because I had a child by him.'' The record does not show how long Buck and Selena lived together, but it was a long time. They separated and Selena ''got with Otis Jones'' and lived with him for six years or more.

About six months after Buck died, Selena separated from Jones. About five months after Jones and Selena separated, Alex Hill introduced himself to Selena in a Vicksburg Cafe and told her his troubles, and Selena told him to forget his troubles and smiled at him; and that is the way Selena and Alex got together. Pursuant to arrangements made at this first meeting, Hill finished gathering his crop and he and Selena started living together and continued to do so until Alex was killed some two and a half years later. During this time they lived under the same roof, Alex supported her, they slept together, pooled their money, went to church together, bought a house as man and wife, and held themselves out as man and wife.

While Selena and Buck lived together, she called herself Selena Buck before and after their marriage. When she quit Buck, and "got with" Otis Jones, she called herself Selena Jones, because "Jones was responsible", and after Buck died, she understood she was the common law wife of Otis Jones. When she and Alex Hill began living together, she called herself Selena Hill. She testified that while she was living with Buck before the ceremonial marriage she was his common law wife; that she was the common law wife of Otis Jones after Buck died; that she was Alex Hill's common law wife after she "got with" him; that the manner of living with these three men was the same. It is abundantly clear that the arrangements of "common law wife" as Selena understood it was one that could be dissolved at will and needed no divorce to end it; that she knew how to get married; that she had an agreement with Alex to go to the courthouse and get married, but Alex was killed before this was accomplished. It was shown that others had suggested to Alex that if Selena was good enough to live with, she was good enough to marry, and that he should marry Selena.

If Selena is to recover in this case, she must do so on the ground that she was the common law wife of Alex Hill when he died. This is not a matter involving the claim of a putative wife mentioned infra because there had never been any ceremonial marriage between Alex and Selena.

While common law marriages are recognized in this State, the claim of a common law marriage is regarded with suspicion and will be closely scrutinized. The agreement between the parties must be unequivocal and free from any reservations, mental or otherwise, to the full extent that, when consummated by cohabitation, nothing less than a decree of divorce pronounced by a court of competent jurisdiction can dissolve the relation. Ridley v. Compton, 215 Miss. 532, 61 So. 2d 341.

We do not intend to depart from the many precedents of this jurisdiction holding that common law marriages, when properly established by the evidence, are valid. Nor do we intend to endow concubinage with the aura of sanctity, and call it marriage. Marriage is the most important of all contractual relationships, and on it rests our social order. It is based on the moral order and religion and is the antithesis of licentious cohabitation. Judicial sanction of loose and doubtful arrangements between men and women as marriages cannot but weaken the public estimate in the sanctity and enduring nature of the marriage relation, jeopardize the rights of inheritance, and place immorality too near the level of the matrimonial state ordained by God, or at least the civil authorities.

We hold that the evidence failed to measure up to the requirements of law necessary to establish a common law marriage.

Selena pleads estoppel on the part of the employer and its insuror to deny that neither of the rival claim-

552

ants, Ada and Selena, are entitled to compensation benefits. This plea is based on the position taken by the employer and insuror in their brief on the former appeal wherein it was stated that ''having reached the decision that they owe compensation to one of the alleged widows,'' they concluded that they should not appeal from the Commission's order (the original order), and, therefore, took no appeal. It is urged here that the Supreme Court on the former appeal was induced to consider the case as an issue between Selena and Ada with the employer and its insuror as an interpleader.

■ ■ The elements of judicial estoppel do not here appear. None of the parties knew that Ike Moore was alive when the employer and its carrier filed their brief on the former appeal. ■ ■ Besides, one of the essential elements of judicial estoppel is that the party claiming estoppel must have been mislead and changed his position. Neither of the claimants in this case changed their position because of the position taken by the employer and its carrier on the former appeal.

The provisions of Section 6998-27, Code of 1942, also answer this contention.

The judgment of the circuit court denying compensation to Ada Hill is affirmed, and the judgment awarding compensation to Selena Hill is reversed, and judgment entered here for the employer and its insuror, and the Commission's order is reinstated.

Affirmed in part, reversed in part, and judgment here, and commission's order reinstated.

*Roberds*, P.J., and *Lee, Arrington* and *Ethridge*, JJ., concur.