Florence Mae GREEN

v.

Abraham A. RIBICOFF, Secretary of
Health, Education & Welfare.

Civ. A. No. 2372.

United States District Court
S. D. Mississippi, S. D.

Dec. 31, 1961.

George E. Estes, Jr., Gulfport, Miss.

Leonard Melvin, Jr., Laurel, Miss., for plaintiff.

Robert E. Hauberg, U. S. Atty., Jackson, Miss.

Edwin R. Holmes, Jr., Asst. Atty. Gen., Jackson, Miss., for defendant.

MIZE, Chief Judge.

The record in this case presents a controversy between Florence Mae Green and Ellen Green as to which one is the lawful

widow of Willie Green and which one is entitled to the benefits of social security. There is practically no controversy in the testimony, but the record presents strictly a question of Mississippi law.

Florence Mae Green, petitioner, entered into a ceremonial marriage on October 20, 1950, with the deceased wage earner, Willie Green. She and he were married in Smith County, Mississippi, all of which is shown by the certified copy of the marriage records of Smith County. This date of the ceremonial marriage is a crucial one in determining the outcome of this controversy.

Ellen Green, in whose favor the administrative department decided, claims as a common-law wife, and, of course, if there were substantial evidence as applied under the law of Mississippi to support that finding, she would be entitled to the proceeds, but if there is no substantial evidence upon which to base that conclusion, then the petitioner, Florence Mae Green, and her two minor children, are entitled to the proceeds.

The deceased, Willie Green, died January 29, 1958. His first marriage, which was a valid marriage, was to Velma Morgan, in Jones County, Mississippi, July 13, 1936, and this marriage was not dissolved until June 22, 1944. On October 4, 1941, practically three years before the date of the divorce from Velma Morgan, he entered into a bigamous marriage with Ellen Jones in Jones County, Mississippi, and it is the contention of the defendant that Ellen Jones is the widow by virtue of that marriage and the continued relationship between Ellen and the wage earner from time to time until his death. He attempted several other marriages, all of which were void, as will be referred to hereinafter.

The record in this case shows that the only two valid marriages the deceased ever had was his first marriage to Velma Morgan, from whom he was divorced as aforesaid on June 22, 1944, and his last marriage to Florence Mae Green on October 20, 1950, and to which marriage there were two children born, to-wit: Mattie Mae Green on July 8, 1952, in Jones County, Mississippi, and Ellen Patricia Green, born May 4, 1954, in Gulfport, Mississippi. There were two children born to Ellen during the time that she and Willie were living together, but admittedly both of those are illegitimate and Ellen makes no claim to one, as she admits that Willie was not its father. One child was born July 13, 1942, and one July 13, 1944, at a time when Willie was overseas with no access to Ellen, so that without conflict, the child born July 13, 1942, was born at a time when Ellen and Willie were living in adultery, as well as being guilty of bigamy, since he was not divorced from Velma until June 22, 1944. The child that was born July 13, 1944, could not possibly have been begotten or conceived except long before he received his divorce on June 22, 1944. Since the parties all lived in Mississippi, it is conceded that the law of Mississippi will govern.

██ The Mississippi Supreme Court in quite a number of decisions has passed upon the question here involved, and without conflict in the authorities in Mississippi has answered the questions presented here. These authorities demonstrate very clearly that a ceremonial marriage solemnly entered into supersedes any contention as to a common-law marriage, and the presumption is so strong that a common-law marriage cannot be recognized where there is a subsequent ceremonial marriage. In the case of Warren by Stuckey v. Warren, 218 Miss. 785, 67 So.2d 707, the court said "thus, in order to establish a common-law marriage, all the essential elements of such a relationship * * * must be shown by clear, consistent, and convincing evidence, especially must all the essential elements of such relationship be shown when one of the parties is dead."

██ In the case of Ridley v. Compton, 215 Miss. 532, 61 So.2d 341, the Mississippi Supreme Court quoted with approval from one of its former cases of Barton v. State, 165 Miss. 355, 143 So. 861, "It, is, of course, among the essentials of a valid common-law marriage that

both parties must intend in good faith to live together in the relation of husband and wife, and that the union shall be permanent and exclusive of all others."

"The agreement between the parties must be unequivocal and free from any reservations, mental or otherwise, to the full extent that, when consummated by cohabitation, nothing less than a decree of divorce pronounced by a court of competent jurisdiction can dissolve the relation."

The court in the Compton case further said, "But a claim of common law marriage is regarded with suspicion and will be closely scrutinized, and in order to establish a common law marriage, all the essential elements of such a relationship must be shown to exist."

From these authorities it will be seen that a common-law marriage to be recognized in Mississippi must be entered into in good faith and by agreement of each of the parties that they do solemnly enter into the relationship of marriage, and in addition thereto must cohabit as man and wife and hold themselves out so much publicly that the public in general recognizes them as man and wife. If there be absent either one of these elements, then the relationship is that of adultery.

Under the record in this case it is very clear and distinct that the deceased wage earner never at any time entered into any common-law marriage in good faith with the claimant Ellen. His first relationship with Ellen was in a state of bigamy. Then, the remainder of the time, after the impediment was removed it was a state of adultery. The record shows in this case that after his divorce in 1944 and while he was still in the army that when he returned from the army he assumed his relationship with Ellen without any change at periodic times. Ellen herself admits in her testimony that the relationship did not change but that she and he discussed getting married but never did.

In the case of Bracey v. Bracey, 148 Miss. 688, 114 So. 750, the Mississippi Supreme Court, quoting from a former Mississippi case of Floyd v. Calvert, 53 Miss. 37, and quotes with approval this language from the Calvert case: "When persons, originally at liberty to form a legal or an illegal union, as they prefer, elect the criminal in preference to the lawful relationship, they must be presumed to have continued therein, until some change of intention and wishes is affirmatively shown."

The Bracey case was a contest between brothers and sisters on one side of the controversy, and the alleged common-law wife of the deceased person, and the court there held that the brothers and sisters were entitled to recover.

Where it is shown that the relationship between a man and woman is adulterous in its inception, the presumption is that that relationship continues to exist until it is overthrown by certain proof. As was said in the case of McClish v. Rankin, a Florida case, 153 Fla. 324, 14 So.2d 714, "Where a sexual relationship is shown to have been meretricious in its inception it is presumed to continue. Thus when testimony offered by the appellee established cohabitation between the appellant and the deceased at a time when the latter was ineligible to marry the burden shifted and it was her duty to show the metamorphosis from concubinage to marriage."

In the case of Whitman v. Whitman, 206 Miss. 838, 41 So.2d 22, wherein there was a contest between Ethel Gaines Whitman, an alleged common-law wife claimant on one side, and Mary Whitman, who was married to the same man, John Whitman, by ceremonial marriage, it was claimed by Dorothy Whitman, a daughter of Ethel and John H. Whitman, that John H. Whitman and Ethel Gaines Whitman contracted a valid common-law marriage in 1910 or 1911 and cohabited as husband and wife until after Dorothy was born on June 17, 1914. Subsequent to that date John Whitman contracted a ceremonial marriage with Mary on June 4, 1918, without having been divorced from Ethel. In this case the supreme

court of Mississippi said, "Under the law there is a strong presumption in favor of the validity of the ceremonial marriage as against the prior alleged common-law marriage. In the early case of Powell v. Powell, 27 Miss. 783, * * * this court committed itself to this doctrine from which it has never departed. It was there said 'The law favors marriage, and when one is solemnized according to the forms of law the court will not declare its nullity on anything less than certain and clear testimony, especially after it had been dissolved by the death of one of the parties.'"

In the Whitman case the court further said, "The presumption of marriage from cohabitation and reputation is rebutted or overcome by proof of a subsequent ceremonial or actual marriage, since the presumption of the validity of such marriage is stronger than the presumption of the previous marriage from cohabitation and reputation." (Emphasis mine.)

In the same case the court further said, "The presumption of the validity of the last marriage has been held to be the strongest presumption known to the law; and in the absence of additional facts or circumstances it must prevail over all conflicting presumptions, such as presumptions as * * * to the validity * * * of a prior marriage."

And the court in the same case quoted with approval from 55 C.J.S. Marriage § 45 p. 911, "A claim of common-law marriage is regarded with suspicion and will be closely scrutinized. Thus, in order to establish a common-law marriage, all the essential elements of such a relationship * * * must be shown by clear, consistent, and convincing evidence, especially must all the essential elements of such a relationship be shown when one of the parties is dead."

In the case of United States Fidelity & Guaranty Co. v. Smith, 211 Miss. 573, 52 So.2d 351, which was a contest between a widow by ceremonial marriage and one claiming to be a common-law wife, the court said, "The presumption of marriage from cohabitation and reputation is rebutted or overcome by proof of a subsequent ceremonial or actual marriage, since the presumption of the validity of such marriage is stronger than the presumption of the previous marriage from cohabitation and reputation, especially where the ceremonial or actual marriage occurs after a long separation following the cohabitation and reputation relied upon to establish the competing marriage," and in the following paragraph it approved its holding in the Powell case heretofore cited that the Mississippi court would not declare a ceremonial marriage a nullity upon anything less than clear and certain testimony.

In short, the effect of these decisions is that where a ceremonial marriage is entered into, the presumption can be overcome only by certain testimony as to a prior valid marriage. No common-law marriage can be proved with a degree of certainty so as to overcome the presumption arising from a ceremonial marriage except by divorce or death.

In the case of Wallace v. Herring, 207 Miss. 658, 43 So.2d 100, the court said, "The marriage between L. A. Wallace and Anna Wallace, being a ceremonial marriage, raised a presumption that the former marriage of L. A. Wallace had been dissolved either by death or divorce and the burden of overcoming such presumption rested upon the parties asserting the invalidity of the marriage. This rule is well established in this State and about it there can not be any doubt."

In that case the court further said, "In fact, it was said in Vaughan et al. v. Vaughan, supra, [195 Misc. 463, 16 So. 2d 23] that this presumption arising from a subsequent marriage that prior marriages had been dissolved by divorce is one of the strongest presumptions known to the law, and will prevail unless overcome by competent evidence to the contrary."

As a matter of fact the record in this case shows that the deceased wage earner had only two valid marriages. The first marriage to Velma Morgan on July 13, 1936, was a valid ceremonial marriage

and they lived together for only a short while but were not divorced until 1944. He contracted the bigamous marriage to Ellen, one of the claimants herein, on October 5, 1941, but this was not a valid marriage but was bigamous and the relationship between Ellen and the deceased was that of living in adultery. The only other valid marriage that he had was one with Florence Mae Green, the other claimant herein, which was solemnized on October 20, 1950, and this marriage was never dissolved by divorce or otherwise until his death, and to this marriage were born two children.

The record shows that he undertook various other ceremonial marriages, but none of those alleged wives make any contention in this proceeding. The deceased, the record shows clearly, was nothing more than a philanderer. His relationship with Ellen was one of adultery throughout all the time that they were living together. As a matter of fact, they were not actually living together but for short periods of time intermittently and if totalled up would not amount to more than one-and-a-half to two years. He and Ellen were not competent to marry and the holding out was false because they were living in adultery during the time prior to his divorce from Velma. After the divorce from Velma he and Ellen lived together for a while but in the same relationship as prior to the divorce. Ellen admits this herself. When her testimony was taken she admitted that the relationship between her and the deceased did not change any after the divorce and admitted in effect that she and the deceased knew they were not living as husband and wife at that time, as she stated that after the divorce she and Willie talked about getting married but never did.

On October 7, 1952, Willie's declaration to the Veterans' Administration gave his marital status on October 7, 1952, and in which declaration he stated that he had two marriages, one to Velma, which was terminated in 1944, and the other to Florence Mae Norris (now Florence Mae Green, Claimant), and that document shows that he knew that he had only two valid marriages.

■ Under the authorities hereinabove cited, it is clear that in order for a common-law marriage to materialize into a valid marriage there must be a meeting of the mind of both parties to enter into a common-law marriage. One might in good faith enter into it, but if the other has a mental reservation that he is not entering into a marriage ceremony for life the marriage is null and void. The record in this case shows that Willie never at any time intended any marriage to be a valid marriage other than the one to Velma, from whom he was afterward divorced, and the one entered into with claimant, Florence.

■ There was no substantial evidence upon which Ellen could be recognized as the widow of the wage earner, and unless the record as a whole shows that there was substantial evidence upon which the ruling could be based, it must be set aside. The law requires that in order for a ruling to be upheld it must be based upon substantial evidence and determined from the record as a whole. In the case of United States Fidelity & Guaranty Co. v. Smith, 211 Miss. 573, 52 So.2d 351, and referred to hereinabove, the Mississippi Supreme Court said, "The presumption of marriage from cohabitation and reputation is rebutted or overcome by proof of a subsequent ceremonial or actual marriage, since the presumption of the validity of such marriage is stronger than the presumption of the previous marriage from cohabitation and reputation, especially where the ceremonial or actual marriage occurs after a long separation following the cohabitation and reputation relied upon to establish the competing marriage."

Under this authority, as well as the others, supra, the finding of the examiner must be set aside and Florence Mae Green and her two children adjudicated to be the lawful widow and children of the deceased wage earner.

An order may be drawn in accord herewith.