**HOAGE, Deputy Com'r, United States Employees' Compensation Commission, et al. v. MURCH BROS. CONST. CO. et al.**

No. 5010.

Court of Appeals of District of Columbia.
Argued May 5, 1931.
Decided June 1, 1931.

W. B. Wright and Leo A. Rover, both of Washington, D. C., for appellants.

Edwin A. Swingle and Ernest A. Swingle, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

On December 3, 1928, Turner Sutton, a resident of the District of Columbia, while employed as a laborer by Murch Bros. Construction Company, one of appellees, received injuries from which he died. Thereafter a claim for compensation under the District of Columbia Workmen's Compensation Act was filed with the Compensation Commission by Sadie Turner Sutton, as his surviving common-law wife. A hearing was had; the injury, death, and notice were admitted, as well as the relationship of employer and employee and that the services then being performed by deceased were incidental to his employment. At the conclusion, the commissioner found as a fact "that Sadie Turner

Sutton and deceased had lived together in good faith for a period of about three years as husband and wife, and had held themselves out to the public as husband and wife, and were generally known as such, and that at the time of deceased's death, she was his surviving wife living with him and dependent upon him for her support." The award is contested by the employer and the insurance carrier on the ground, first, that the evidence did not sustain the commissioner's findings; and, secondly, that, if it did, the relationship of common-law marriage does not exist in the District of Columbia. The lower court allowed a permanent injunction on the ground that the finding that appellant had entered into a common-law marriage in the District of Columbia did not entitle her to compensation because no such marriage is legal under the laws of the District.

We think that the findings of fact of the deputy commissioner were supported by substantial evidence, and that, in such circumstances, such findings cannot be disturbed by this court. Wheeling Corrugating Co. v. McManigal (C. C. A.) 41 F.(2d) 593.

We come, therefore, to consider whether or not a common-law marriage is valid in the District of Columbia. At common law, no formal ceremony was essential to a valid marriage. Chancellor Kent states the doctrine thus: "No peculiar ceremonies are requisite by the common law to the valid celebration of the marriage. The consent of the parties is all that is required; and as marriage is said to be a contract jure gentium, that consent is all that is required by natural or public law. The Roman lawyers strongly inculcated the doctrine, that the very foundation and essence of the contract consisted in consent freely given, by parties competent to contract. Nihil proderit signasse tabulas, si mentem matrimonii non fuisse constabit. Nuptias non concubitus, sed consensus facit. This is the language equally of the common and canon law, and of common reason. If the contract be made per verba de praesenti, and remains without cohabitation, or if made per verba de futuro, and be followed by consummation, it amounts to a valid marriage in the absence of all civil regulations to the contrary, and which the parties (being competent as to age and consent) cannot dissolve, and it is equally binding as if made in facie ecclesiæ."

In England so-called common-law marriages were forbidden after 1753, and, by act of Parliament, it was provided that all subsequent marriages not celebrated according to the formalities therein prescribed should be invalid. Act 26 George II, c. 33. But, so far as we can determine, this act was never adopted in any of the states of the United States. However, in the case of Reg. v. Millis, 10 Cl. & Fin., 534, it was declared that by the law of England, as it existed at the time of the passage of the Marriage Act (Act 26 George II), a contract of marriage per verba de præsenti was a contract indissoluble between the parties themselves, affording to either of the contracting parties, by application to the spiritual court, the power of compelling the solemnization of an actual marriage, but neither in the American colonies nor in the states of the United States has there ever been any ecclesiastical tribunal with power to enforce the solemnization of marriages between parties contracting per verba de præsenti, and so in this country it has been generally held that a marriage according to the common law is valid and binding, in the absence of a statute prohibiting or declaring void a marriage not solemnized in accordance with its provisions, and also it has been held, by the greater weight of authority, that statutory provisions as to solemnizing marriages, not containing words of nullity, are directory merely, and do not affect the validity of common-law marriages. Meister v. Moore, 96 U. S. 76, 78, 24 L. Ed. 826. But in the state of Maryland it was decided otherwise in Denison v. Denison, 35 Md. 361, and it is quite true we held in De Forest v. U. S., 11 App. D. C. 458, that, by the Act of February 27, 1801 (2 Stat. 103), the laws of the state of Maryland as of that date were continued in force in the District of Columbia, and we need not stop to inquire whether, by the change in chapter 3, tit. 1, of the Code of 1929, in which all reference to the laws of Maryland is omitted, this is no longer true. The fact remains that Congress has enacted a complete set of divorce and marriage laws for the District of Columbia, and it is to these laws, rather than to those preserved out of the past relationship with the state of Maryland, that we must look for guidance and control in the determination of the question now before us, and hence we do not think we can safely follow the decision of the Court of Appeals of Maryland in Denison v. Denison, supra, in which it was held that under the Maryland Marriage Act of 1777, to constitute a lawful marriage, "there must be superadded to the civil contract, some religious ceremony," for this is not true under the marriage laws of the District.

In Meister v. Moore, supra, in which the

validity of common-law marriages in Michigan was involved, the Supreme Court, in passing upon an instruction of the lower court to the effect that a marriage was invalid if neither a minister nor a magistrate was present, said: "It certainly withdrew from the consideration of the jury all evidence, if any there was, of informal marriage by contract per verba de præsenti. That such a contract constitutes a marriage at common law there can be no doubt, in view of the adjudications made in this country, from its earliest settlement to the present day. Marriage is everywhere regarded as a civil contract. Statutes in many of the States, it is true, regulate the mode of entering into the contract, but they do not confer the right. Hence they are not within the principle, that, where a statute creates a right and provides a remedy for its enforcement, the remedy is exclusive. No doubt, a statute may take away a common-law right; but there is always a presumption that the legislature has no such intention, unless it be plainly expressed. A statute may declare that no marriages shall be valid unless they are solemnized in a prescribed manner; but such an enactment is a very different thing from a law requiring all marriages to be entered into in the presence of a magistrate or a clergyman, or that it be preceded by a license, or publication of banns, or be attested by witnesses. Such formal provisions may be construed as merely directory, instead of being treated as destructive of a common-law right to form the marriage relation by words of present assent. And such, we think, has been the rule generally adopted in construing statutes regulating marriage. Whatever directions they may give respecting its formation or solemnization, courts have usually held a marriage good at common law to be good notwithstanding the statutes, unless they contain express words of nullity."

And in the more recent case of Travers v. Reinhardt, 205 U. S. 423, 440, 27 S. Ct. 563, 51 L. Ed. 865, the doctrine announced in Meister v. Moore, was reaffirmed and approved.

We think, therefore, that it cannot now be controverted that an agreement between a man and woman per verba de præsenti to be husband and wife, consummated by cohabitation as husband and wife, constitutes a valid marriage, unless there be in existence in the state in which the agreement is made a statute declaring the marriage to be invalid unless solemnized in a prescribed manner, and we think it equally true that the

rule now generally recognized is that statutes requiring a marriage to be preceded by a license, or to be solemnized by a religious ceremony, without express words of nullity as to marriages contracted otherwise, are directory merely, and failure to procure the license or to go through a religious ceremony does not invalidate the marriage. See 79 Am. St. Rep. 362; Ann. Cas. 1912D, 598; 7 Ann. Cas. 784; 124 Am. St. Rep. 122—where the cases on the subject are fully collected. In this view, we must have recourse to the provisions of the marriage laws in the District of Columbia in order to answer the question upon which the decision turns.

Title 14, page 139, Code D. C. 1929, section 1 of chapter 1, under the title "Marriage," makes void ab initio marriages contracted between persons of certain degrees of relationship, and persons who have been previously married and not divorced, or the marriage state otherwise terminated. It likewise avoids marriages between idiots, parties below the age of consent, or parties incapable from physical causes. Section 6 provides: "For the purpose of preserving the evidence of marriages in the District, every minister of the gospel appointed or ordained according to the rites and ceremonies of his church * * * may be authorized by any justice of the supreme court of the District of Columbia to celebrate marriages in the District. And marriages may be celebrated in the District by any judge or justice of any court of record"; and provides further that marriages of the members of any church or religious society which does not by its custom require the intervention of a minister for the celebration of marriages may be solemnized in any manner prescribed by such society. Section 7 prescribes a penalty for the performance of a marriage by an unauthorized person, and section 8 prohibits any person celebrating the rites of marriage without having had first delivered to him a license issued therefor. There is nothing in the statute which declares that a marriage shall not be valid unless solemnized in the prescribed manner, nor does it declare any particular thing requisite to the validity of the marriage. The act confines itself wholly with providing the mode of solemnizing the marriage and to the persons authorized to perform the ceremony. Indeed, the statute itself declares the purpose underlying the requirements to be to secure registration and evidences of the marriage rather than to deny validity to marriages not performed according to its terms, and, since

986

the legislative intent to abrogate the common-law right may not be presumed, unless clearly expressed (Meister v. Moore, supra), we are necessarily brought to conclude that the decision of the lower court that common-law marriages in the District are invalid is not supported by law, and is wrong. The case of Meister v. Moore was decided in 1877, and Travers v. Reinhardt in 1907, and we must assume that Congress knew of these cases. Much water has since passed over the dam, and the statutes on the subject in the District have remained unchanged, and if, as was said by the Court of Appeals of Virginia in Offield v. Davis, 100 Va. 250, 40 S. E. 910, the doctrine of common-law marriage is contrary to public policy and public morals, it is for Congress and not the courts to do what is needful by appropriate legislation to declare such unions null and void.

The decree of the lower court is therefore reversed, with costs, and the case remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.