1072

**LUMBERMEN'S MUT. CASUALTY CO. v. HOAGE, Deputy U. S. Employees' Compensation Com'r, et al.**

No. 5434.

Court of Appeals of the District of Columbia.

Argued April 6, 1932.

Decided May 2, 1932.

Frank F. Nesbit, Lucien H. Mercier, and Charles E. Pledger, Jr., all of Washington, D. C., for appellant.

Leo A. Rover, U. S. Atty., John W. Fihelly, and John J. Wilson, Asst. U. S. Attys., Israel J. Mendelson, and William A. Coombe, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District dismissing appellant's bill to enjoin enforcement of an award by appellee as Deputy United States Compensation Commissioner for the District to Mrs. Mary E. Clarke, mother of William E. Clarke, deceased, under the provisions of the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927 (44 Stat. 1424, U. S. C., Supp. V, title 33, c. 18, §§ 901–950, 33 USCA § 901 et seq.), made generally applicable to the District of Columbia by the Act of May 17, 1928 (45 Stat. 600, D. C. Code, title 19, c. 2, §§ 11, 12).

On Sunday, March 30, 1930, the day of the accident resulting in Clarke's death, he was in the employ of the N. Auth Provision Company, a corporation engaged in the provision and garage business in the District; his duties being to act as day man, car washer, and helper in the company's public garage. On the morning of that day a car belonging to William A. Schwartz, a mechanic in the employ of the company and a fellow employee of Clarke's, had broken down in Virginia. Through the medium of a note left at the garage in the morning, Schwartz sought permission from the superintendent of the garage, Fred H. Stalfart, to use the towing car of the company to tow in the disabled car. The note was found by Stalfart later in the day, when he put thereon his "O. K." About 5 o'clock in the afternoon Schwartz (who was off duty that day) returned to the garage, found the approved note, and asked Clarke, whose duties for the day were about to end (the night watchman having arrived), to help him (Schwartz) tow in the car. Schwartz testified: "I told him I had my car broke down in Virginia and had to tow it in and I asked him to come along out there and pull it in. * * * I told him I had got permission from Mr. Stalfart to use a service car." Clarke and Schwartz then drove out to the Schwartz car and started to tow it back, Clarke driving the towing car. The towrope broke. Clarke drove on some distance, apparently not knowing that the rope had broken, when his car stalled, and, while he was standing beside it and endeavoring to overcome the difficulty, was struck by a passing car and fatally injured.

Stalfart testified that Clarke was hired as a washer; that his duties included "anything that he was capable of doing, at the garage or elsewhere." Asked if it was part of Clarke's duties to tow in cars, he replied:

"Yes, sir; it was." Asked whether the permission he gave Schwartz to use the tow car carried with it authority to have a driver, he replied in the negative. He was then asked how Schwartz could tow the car in. He replied that he could take a friend; that it was not objectionable for him to make use of Clarke. Asked if he had contemplated making a charge for the service rendered to Schwartz, he replied: "If Schwartz had towed his car in, if my personal car had been towed in, or any other employee's, a charge would have been made, * * *; I pay for my work and Schwartz pays, and every other employee pays for what he gets. There would have been a personal charge made, irregardless."

Stalfart was asked:

"Do you consider Clarke was merely accommodating this man or rendering service to the company by going out with the service car? Answer. It would be pretty hard to answer that.

"Question. If you cannot answer it—that is the thing we have to figure out, you know. Would you permit him to do it on his own time then, if one of your fellow employees had been in distress? Answer. If he had gone out on the company's time, there would have been, or Schwartz would have paid, a charge for it.

"Question. For his time? Answer. He would have paid a towing charge.

"Question. He would have paid a towing charge? Answer. Yes.

"Question. What would that consist of? What would make up the amounts of that towing charge, if you were figuring it? Answer. According to the number of miles, how far he had to go for it.

"Question. Would you charge for the time of the man that went out and got it in, in addition to the use of the car? Answer. I never have charged that way for towing.

"Question. You charge mileage, then, and that covers the expense of towing? Answer. Yes; it depends more on the distance, on the basis of mileage.

"Question. You charge on the basis of mileage? Answer. Yes; the same as anyone else makes charges of that character."

It further appears that on other occasions Clarke had worked overtime, but that he received no extra compensation for the service; that no employees in the garage received overtime pay.

■ Was there substantial evidence before the deputy commissioner that Clarke at the time of his injury was performing services "arising out of and in the course of" his employment? If so, the decree must be affirmed. New Amsterdam Casualty Co. v. Hoage (App. D. C.) 46 F.(2d) 837, 59 W. L. R. 91; Hoage v. Murch Bros. Const. Co. (App. D. C.) 50 F.(2d) 983, 59 W. L. R. 552.

■ That the service performed by Clarke at the time of his injury was within the general scope of his employment is plain. Did the evidence justify a finding that at the time of his injury he was acting in the capacity of an employee? The tow car was an agency of the employer, and Schwartz was expressly authorized to use it on this occasion. While Stalfart testified that authority to use the tow truck did not carry with it authority to have a driver, he also stated that it was not objectionable for Schwartz to make use of Clarke's services. He later testified that if Clarke had gone out on the company's time, "Schwartz would have paid a charge for it"; that 'the custom was to charge mileage, "and *that covers the expense of towing*." We attach no particular importance to the fact that Clarke's regular duties at the garage had about ended for the day, because the evidence discloses that he was frequently required to work overtime and that he received no extra compensation therefor. When Schwartz sought Clarke's assistance, he informed Clarke that he had obtained permission to use the service car. While Schwartz testified, in answer to a question on cross-examination, that Clarke's assistance was a personal favor to Schwartz, he did not testify that he made such a statement to Clarke. His testimony on this point was: "I asked him to come along to drive one of the cars, help me tow it in. I told him I had got permission from Mr. Stalfart to use a service car."

When Schwartz informed Clarke that he had obtained permission from Stalfart to use the service car of the company to tow in his car and requested Clarke to accompany him and perform a service which Clarke had frequently performed in towing other cars, we think the circumstances were such as to justify Clarke in assuming that in acceding to Schwartz's request he would be performing a service for his employer. Had a similar service been performed for one other than an employee, the charge, according to Stalfart's testimony, would have been based on mileage, and that would have covered "the expense of towing," including the driver's services. As an employee, Clarke must have known that every employee "pays for what

he gets." He therefore would have been justified in assuming that Schwartz would have to pay for the tow service based on mileage, and that this tow service would have entitled Schwartz to have a driver furnished for the tow car.

We are constrained to affirm the decree.

Affirmed.