398

## WILSON v. ATWOOD.
### No. 5984.

Court of Appeals of the District of Columbia.
Argued Jan. 15, 1934.
Decided Feb. 12, 1934.

HITZ, Associate Justice, dissenting.

Jean M. Boardman, of Washington, D. C., for plaintiff in error.

Milton Conn and George J. Boden, both of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This case is here upon a writ of error issued to the municipal court of the District of Columbia.

It appears that the parties, Elwood M. Wilson and Elsie Mae Atwood, were husband and wife, and on April 6, 1929, they executed a written contract for a separation, wherein they recited that differences and disputes had arisen between them, and that they intended to live apart from each other during the remainder of their natural lives. In the contract it is recited that the husband wishes to maintain his wife according to his income and station in life, and, among other arrangements to that effect, he stipulated as follows: "That in further settlement and satisfaction of their agreement the said husband agrees to pay his said wife or her attorney the sum of $100 per month, in two equal installments of $50 each

on the first and fifteenth of each month, the first payment of which shall be due and payable on the 15th day of April, 1929."

The agreement contained the following stipulation: "It is also understood and agreed between the parties hereto that in the event that a divorce or an annulment should be granted at any time dissolving the bonds of matrimony between them and that, subsequently, the wife should remarry, the husband thereby will be relieved from the payment of any further monthly sums as agreed to herein."

The contract contained no other provision relating to a termination of such payments to the wife by reason of any future conduct or circumstance of either of the parties.

On January 17, 1933, the wife as plaintiff filed an action in the municipal court of the District of Columbia seeking to recover from the husband as defendant the sum of $50 alleged to be due to her on January 15, 1933, under the provisions of the agreement.

The husband thereupon filed an affidavit of defense, wherein he admitted the execution of the separation agreement and admitted that he had not paid the installment of $50 claimed to be due on January 15, 1933. He alleged, however, that on September 26, 1931, the plaintiff had obtained in the corporation court of the city of Alexandria, Va., a decree of divorce dissolving the bonds of matrimony between them, and that for a long period of time prior to January 15, 1933, the plaintiff had committed adultery with a certain man whose name was disclosed, and had cohabited with him as his mistress. The defendant averred that the adultery of the plaintiff had abrogated the separation agreement, and had terminated his obligation to make further payments under its provisions.

The cause came on for trial before a jury in the municipal court, and upon a statement of the issue the court directed the jury to return a verdict for the plaintiff in the sum sued for. Judgment was entered upon the verdict, and the present writ of error has been allowed for a review thereof.

The sole question in the case is whether the alleged adultery of the wife subsequent to the separation operates to defeat her right to the payments provided for in the agreement, notwithstanding the fact that no express provision to that effect is contained therein. In our opinion this question must be answered in the negative.

It is not contended that the divorce procured by the wife subsequent to the date of

the contract had the effect of releasing the husband from his obligations. For, it is expressly stipulated in the contract that such a release would follow only in case the wife subsequently entered into another marriage, whereas no such marriage has occurred in this case. Moreover, it has been held by us in Santmyer v. Santmyer, 48 App. D. C. 310, that a contract of separation between husband and wife is not affected by a decree of divorce in favor of the husband on the ground of desertion, in the absence of an express adjudication respecting the contract, even though the decree is silent on the subject of alimony. Mr. Justice Van Orsdel, speaking for the court, said: "But the effect of a decree of divorce upon a contract such as the one before us is not new to the courts. It is no longer an open question that, in the absence of express adjudication upon proper pleadings adverse to the agreement, it remains in force unaffected by the decree." It may be noted that nowhere in the present case does it appear that the contract of separation was considered or passed upon by the decree of the Virginia court granting a divorce to the wife.

It is evident that the contract of separation was drawn with great care, and that the subject of a possible termination of its obligations by reason of the future conduct of the wife was considered and was provided for by the clause relating to a subsequent divorce and remarriage by her. The absence of any provision relating to the possible adultery of the wife demonstrates that the parties in drawing the agreement had no intention of incorporating such a term therein. It follows that for the court to sustain the contention of the husband would amount to the inclusion by us of an additional term in the agreement, such as was not within the contemplation of the parties at the time of its execution. To do so would be equivalent to making a new contract for the parties, rather than enforcing the contract as intended by them.

It is held by the great weight of authority that there is no implied condition in a separation agreement that the wife shall remain chaste.

In 9 R. C. L. 532, it is said: "There is no implied condition in a separation agreement that the wife shall remain chaste. Hence the fact that the wife has not remained chaste is no defense to an action against the husband on the agreement; nor will a conveyance by the husband to a trustee for the use of his wife on the execution of articles of separa-

tion be set aside on account of the subsequent adultery of the wife"—citing Galusha v. Galusha, 116 N. Y. 635, 22 N. E. 1114, 6 L. R. A. 487, 15 Am. St. Rep. 453; 12 Eng. Rul. Cas. 815; 90 Am. Dec. 370 note.

In 30 C. J. 1065, the authorities are collected, and the following text is added: "The authorities generally agree that the adultery of the wife subsequent to the making of a separation agreement does not, in the absence of a stipulation to the contrary, furnish ground for the setting aside of the agreement or the release of the husband from his obligations thereunder, even though such adultery is followed by the birth of a spurious child. * * * "

In Whittle v. Schlemm, 94 N. J. Law, 112, 109 A. 305, 8 A. L. R. 1447, it is said: "The right of a wife, while living separate and apart from her husband, to secure funds provided for her support in a separation agreement, persists even after the commission of an act of adultery by her, unless there is an express stipulation and limitation in the agreement that payment shall cease in the event that she becomes unchaste; for without such provision the common-law obligation of a husband to support his wife continues, unless and until he procures a divorce from her."

In 8 A. L. R. 1447, 1452, in a comprehensive annotation an exhaustive array of authorities is given in support of this rule.

We have examined with care the authorities cited by the defendant in error, but we do not find it necessary to discuss them in detail. In our opinion, the cases cited by him have either been authoritatively overruled or relate but distantly to the question involved in this case.

The decision of the municipal court is affirmed, with costs.

HITZ, Associate Justice (dissenting).

I am unable to agree with the opinion and judgment of the court in this case. The parties to this appeal were married in Washington, where they lived together until 1929, when they separated under a deed of separation dated April 6.

This instrument recites that whatever property they owned and whatever savings they had were accumulated from the earnings of the husband, and then gave to the wife all the furniture and equipment of their residence, except the husband's desk; one-half of their funds in bank; one-half of their savings elsewhere; and $100 per month.

The agreement further provided that nei-

ther party should thereafter interfere with or molest the other, and that, if a divorce should be subsequently obtained and the wife should remarry, her allowance under the agreement should cease.

In September, 1931, the wife did obtain a decree of divorce in a Virginia court, and the monthly payments appear to have continued until January, 1933, when the husband refused to make the payment at that time falling due under the agreement.

Two days later the former wife sued the former husband at law in the municipal court for the monthly installment then due.

I pass over the doubtful question as to whether under our statutes a separation agreement may be enforced elsewhere than in a court of equity. Thompson v. Thompson, 218 U. S. 618, 31 S. Ct. 111, 54 L. Ed. 1180, 30 L. R. A. (N. S.) 1153, 21 Ann. Cas. 921; Notes v. Snyder, 55 App. D. C. 233, 4 F.(2d) 426, 41 A. L. R. 1052: 30 C. J. 1068.

But the former husband in this proceeding admitted the agreement; payments thereunder up to January, 1933; and his default at that time; but defended on the ground that his wife was then living in Washington with another man, not in marriage, but in what the record calls concubinage, and asserted that his wife's conduct constituted a violation of the separation agreement, justifying his refusal to make further payments to her thereunder.

His attorney, in his opening statement, which in the circumstances must be taken as true, though it may be otherwise in fact, named the man with whom the wife was living and the house where they lived in the District of Columbia, but the trial court refused to hear evidence, and gave judgment for the wife on her motion, holding that the wife's living in adultery, if true, was immaterial to any question before the court, and that her former husband was required to continue his payments to her in those circumstances under the separation agreement and the law.

This court now affirms that judgment, and, while I am aware of the weight of authority that supports it in England, where the question has been spoken of as settled for two hundred years, as well as in New York, New Jersey, and Pennsylvania, where sundry decisions affirm it, in my opinion it should not be made the law of this jurisdiction by affirmance of any summary judgment on a motion.

The only cases in this court bearing on the subject look directly the other way upon a related question, though the precise point appears never to have been here decided.

But it has been decided by this court that, when a wife takes a conveyance jointly with her husband of the property constituting their residence, she takes under an implied condition of chastity, and, if she thereafter commits adultery, she cannot seek the aid of a court to give her a division of the property. And further, that, if a husband is awarded a divorce because of his wife's adultery, she forfeits her interest in real estate standing in their joint names, but purchased with the husband's money. Moore v. Moore, 51 App. D. C. 304, 278 F. 1017; Osborne v. Osborne, 59 App. D. C. 288, 40 F.(2d) 800.

My objection to this decision is that it follows the letter of the agreement to the exclusion of the spirit, and that it raises a private right based upon a private contract above important considerations of public policy.

For this court would surely strike down this contract as violating public policy if it stated in express terms what the court now interprets it to mean, namely, that the former wife is entitled to receive the allowance from her former husband so long as she lives in adultery, but must forfeit it if she marries her alleged paramour and lives with him under the law.

If this doctrine is to be made the law of this jurisdiction, it should not be done upon a summary judgment based upon a mere motion, but only after a plenary hearing where all the facts are developed by evidence, if for no other reason, because this court has decided that common-law marriages are lawful in this District, and the facts may show that the lady is living under circumstances constituting a valid common-law marriage. Hoage v. Murch Brothers Construction Co., 60 App. D. C. 218, 50 F.(2d) 983.

In that event, if the letter of the contract is to govern the situation as the court holds, the contingency has arisen which terminates the allowance, for the contract speaks only of a marriage—not of a ceremonial marriage —and this requirement is satisfied by a common-law marriage as well as by another.

In my opinion, the judgment below should be reversed and the cause remanded for a new trial upon evidence developing all the facts.