**Marie L. McCOY, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 4621.**

District of Columbia Court of Appeals.

Argued June 30, 1969.

Decided Oct. 3, 1969.

Albert N. Lobl, Washington, D. C., for appellant.

Leo N. Gorman, Asst. Corp. Counsel, with whom Charles T. Duncan, Corp. Counsel, Hubert B. Pair, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before HOOD, Chief Judge, and FICKLING and NEBEKER, Associate Judges.

PER CURIAM:

This is an appeal from a judgment based on a finding that appellant was not the common-law wife, and thus, is not the widow of the late Hurland T. McCoy. The finding operates to deny appellant her claim against the District of Columbia for salary and annual leave unpaid to Mr. McCoy at the time of his death.

In her effort to prove existence of her common-law marriage, the appellant testified that she "married" Mr. McCoy in August, 1947.[1] The balance of her testimony was an effort to demonstrate absence of any impediment to the asserted marriage, cohabitation and a general community reputation reflecting a marital state. Numerous documents were introduced to aid in establishing such a reputation or a mutual holding out to the public that the two were husband and wife.

That common-law marriages are recognized as lawful in the District of

---

1. The appellee in its brief makes much of the fact that appellant, in her administrative claim and in an answer to an interrogatory, gave an earlier date when the so-called marriage took place. Appellee also argues in support of the trial court's finding that a witness, whom it called, supplied proof that just before Mr. McCoy's death appellant disclaimed being married to Mr. McCoy. However, in view of the state of the evidence, we need not consider the significance of these matters.

Columbia is clear.[2] However, it is equally clear that the proof of such a relationship must derive from evidence

> that the parties cohabited as husband and wife in good faith, that is, that the cohabitation followed an express mutual agreement to be husband and wife. United States Fidelity & Guaranty Co. v. Britton, 106 U.S.App.D.C. 58, 61, 269 F.2d 249, 252 (1959).

See also Hoage v. Murch Bros. Const. Co., 60 App.D.C. 218, 50 F.2d 983 (1931), which requires that the agreement be "per verba praesenti." A careful examination of the record fails to disclose any evidence relating to such an agreement. Presumably, if there was an agreement, appellant could have testified to that effect.

■ Moreover, it cannot validly be contended on this record that existence of such an agreement can be inferred from proof of cohabitation and reputation. While it is true that when neither of the parties is available as a witness the requisite agreement might, through inference, be established from cohabitation and reputation, it is the law in the District of Columbia that

> * * * when one of the parties to the alleged marriage asserts its existence but * * * denies *or fails to say* there was mutual consent or agreement then mere cohabitation, even though followed by reputation, will not justify an inference of mutual consent or agreement to be married. United States Fidelity & Guaranty Co. v. Britton, *supra*, (emphasis supplied).

See also the cases cited and quoted in n. 3 of that opinion. Accordingly, the record not only supports the finding of the trial court, it compels such a finding.

An additional comment by way of conclusion appears warranted in view of present-day sensitivity to many problems of community life. As the court observed in United States Fidelity & Guaranty Co. v. Britton, *supra* at 60, 269 F.2d 249, there is no statute in the District of Columbia on the subject of common-law marriage. Accordingly, such a status is the product of an antiquated law and inattention to whether there is a need for a change. It cannot be gainsaid that few people really understand that such a marriage requires more than mere cohabitation coupled with adoption of the "husband's" surname. Certainly, most of those who live together in such a relationship lack any understanding of all the ingredients and permanency of such marriages. Indeed, experience reveals that many who believe themselves to be "common-law" married have had one or more previous "common-law" relationships without the benefit of divorce.

We commend to the attention of Congress the question whether such an informal and almost uniformly misunderstood status should not be abolished to end creation of such relationships in the future. The considerations which history teaches gave rise to judicial recognition of such informal and unrecorded marital agreements can hardly justify modern day perpetuation. Cost is certainly not prohibitory,[3] and a plethora of public and quasi-public officials are available to solemnize such an important and socially significant occasion.[4] Certainly no one would contend that facilities for recordation are unavailable. Indeed, one might question whether any valid reason exists to encourage and sanction future circumvention of the established and salutary system for formalizing and recording marriages.

Affirmed.

---

2. Lee v. Lee, D.C.App., 201 A.2d 873 (1964).

3. Financial inability is no impediment to the necessary and desirable blood test.

*See* D.C.Code 1967, § 30–121. A marriage license fee is but two dollars. *See* D.C.Code 1967 § 15–717.

4. *See* D.C.Code 1967, § 30–106.