**Paul EAST, Appellant,**

v.

**Margaret Van Amringe EAST, Appellee.**

No. 86–245.

District of Columbia Court of Appeals.

Submitted Oct. 23, 1987.

Decided Feb. 5, 1988.

---

Roy E. Kinsey, Jr., Washington, D.C., was on the brief for appellant. Elizabeth Guhring, Washington, D.C., also entered an appearance, for appellant.

Mark S. Carlin and Sanford K. Ain, Washington, D.C., were on the brief, for appellee.

Before BELSON and TERRY, Associate Judges, and GALLAGHER, Senior Judge.

TERRY, Associate Judge:

This is an appeal from an order granting appellee a separation from appellant, awarding custody of the parties' two children to appellee, and directing appellant to make child support payments to appellee through the registry of the court. Two issues are presented on appeal. Appellant challenges the trial court's finding that a common-law marriage existed between him and appellee, and he contests the amount he is required to pay under the child support award. We hold that the finding of a common-law marriage is supported by the evidence and that the child support order was within the permissible range of the court's discretion. Accordingly, we affirm the order under review.

## I

A major issue in the trial of this case was whether there was a common-law marriage between Margaret and Paul East. The evidence showed that they lived together from April 1977 until November 1983. They had two children, Jonathan and Marika, born in 1978 and 1981, respectively. Margaret testified that soon after she became pregnant with Jonathan, Paul said, at a dinner party on October 31, 1977, "From here on in, Margaret and I are married." Paul denied making any such declaration. To the contrary, he testified that Margaret told their guests that evening that the two of them had been married at noon that day by a justice of the peace. He did not dispute this statement, he said, in order to avoid the embarrassment of revealing that Margaret was lying.

The trial court, after finding that a common-law marriage existed, awarded custody and child support to Margaret. In ordering the support payments, however, the court relied on outdated financial statements. Updated financial information revealed that the children's monthly needs were almost $1,000 less, and that Margaret's net monthly income was almost $1,000 more, than the original financial statements showed. Consequently, a few weeks after entering its original order, the court

entered a second order amending the first one in several respects.

In recalculating its award of child support, the court amended its findings of Margaret's net monthly income from $2,284.10 to $3,148.00, and its finding of Paul's net monthly income from $5,122.00 to $5,440.04. Accordingly, the sentence "Paul's income is roughly twice Margaret's" was amended to read "Paul's income is slightly less than twice Margaret's." The finding that Margaret's monthly expenses for the children amounted to $3,587.63 was amended by changing the figure to $2,280.00.

In its first order, the trial court had required both parties to contribute to the support of their children in proportion to their respective net incomes. That is, the court found that Paul's net monthly income was twice that of Margaret, so that Paul had to pay $2,000 a month and Margaret $1,000 a month toward the total child support expenses of $3,000. The second order changed this two-to-one ratio. Paul's obligation was reduced from $2,000 to $1,900 a month, but Margaret's was reduced much more, from $1,000 to $380 a month. Thus Margaret got most of the benefit of the adjustment in child support costs (from $3,587.63 to $2,280.00), despite the larger upward revision of her monthly net income ($863.90, as opposed to $318.04 for Paul). Paul received one more reduction: his support obligation was lowered from $1,900 to $700 a month during the summer, when the children would be spending most of their time with him.

## II

Common-law marriages have been recognized in the District of Columbia since *Hoage v. Murch Bros. Construction Co.,* 60 App.D.C. 218, 50 F.2d 983 (1931). To prove such a relationship, the evidence must show "that the parties cohabited as husband and wife in good faith, that is, that the cohabitation followed an express mutual agreement to be husband and wife." *United States Fidelity & Guaranty Co. v. Britton,* 106 U.S. App.D.C. 58, 61, 269 F.2d 249, 252 (1959). That agreement, moreover, must be "in words of the present tense...." *Id.* at 60, 269 F.2d at 251; *see McCoy v. District of Columbia,* 256 A.2d 908, 910 (D.C.1969).[1]

■ Appellant erroneously contends that the agreement between the parties to be husband and wife must be established by clear and convincing evidence. This contention arises from a misreading of *Johnson v. Young,* 372 A.2d 992 (D.C.1977). In *Johnson* we held that a common-law marriage had to be proven by clear and convincing evidence, but only because it had allegedly preceded a ceremonial marriage. The more exacting standard of proof was required in order to overcome the legal presumption—"one of the strongest in the law"—that where there is more than one marriage, the most recent one is valid. "[T]he party attacking the second marriage has the burden of rebutting the presumption by strong, distinct, satisfactory, and conclusive evidence." *Id.* at 994 (citations omitted); *accord, Gordon v. Railroad Retirement Board,* 225 U.S.App.D.C. 49, 50, 696 F.2d 131, 132 (1983). Absent a later marriage which triggers the presumption that all marriages but the most recent are void, our law does not prescribe any particular standard of proof on the issue of whether a common-law marriage exists.

---

1. In *Troshinsky v. Rosin,* 428 A.2d 847 (D.C.), *cert. denied,* 454 U.S. 876, 102 S.Ct. 353, 70 L.Ed.2d 184 (1981), this court affirmed the trial court's finding that a common-law marriage did not exist. *Troshinsky,* however, was a suit to set aside a fraudulent conveyance, in which the existence of a common-law marriage was only a secondary issue. Consequently, our opinion did not recite in any detail the evidence on which the trial court had relied. We noted only that "[t]he weight of the evidence, as reflected in the court's findings, was that appellant and the decedent did *not* have a general reputation in the community as being married and hence, as the court concluded, could not have had a common-law marriage." *Id.* at 849 (emphasis in original; citations omitted). This single sentence in *Troshinsky* cannot be read to suggest that evidence of a "general reputation in the community as being married," without more, is sufficient to establish the existence of a common-law marriage. On the contrary, controlling case law going all the way back to *Hoage* in 1931 uniformly requires proof of (1) an express mutual agreement to be husband and wife, followed by (2) cohabitation.

We have found no case in the District of Columbia in which the existence *vel non* of a common-law marriage has been subjected to a burden of proof greater than that required in any other civil case. Thus we hold that a party alleging a common-law marriage need prove it only by a preponderance of the evidence. We are aware that some jurisdictions require a common-law marriage to be proven by clear and convincing evidence, *see Metropolitan Life Insurance Co. v. Johnson,* 103 Idaho 122, 125–126, 645 P.2d 356, 359–360 (1982) (citing cases), but we decline to make the District of Columbia one of those jurisdictions.[2]

 The trial court found that there was a present verbal agreement to be married on October 31, 1977. In the "Findings of Fact" section of its order, the court recited the contradictory evidence concerning that agreement, and in its "Conclusions of Law" the court resolved this conflict in favor of Margaret East. Although this resolution appears in the "Conclusions of Law" section of the order, it is really a finding of fact. *See Perkins v. District of Columbia Department of Employment Services,* 482 A.2d 401, 403 (D.C.1984). Thus it must be affirmed unless appellant can persuade us that it is plainly wrong or without evidence to support it. D.C.Code § 17–305(a) (1981); *see, e.g., District–Realty Title Insurance Corp. v. Forman,* 518 A.2d 1004, 1006–1007 (D.C.1986). Appellant has not made such a showing. The trial court had to weigh conflicting testimony in making this crucial finding. Margaret said that Paul, with her agreement, announced they were married "from here on in," whereas Paul said that Margaret, over his objection, told of a marriage ceremony that actually had not taken place. With evidence on both sides of the issue, the trial court's judg-

ment as to the credibility of the witnesses and the strength of the evidence may not be disturbed.

Finally, appellant points out that some cases, such as *McCoy, supra,* 256 A.2d at 910, have suggested that the District of Columbia should no longer allow common-law marriages. *See also Metropolitan Life Insurance Co. v. Johnson, supra,* 103 Idaho at 125–126, 645 P.2d at 359–360. We are not free to make such a ruling. Unless this court en banc decides to overrule fifty-seven years of precedent, or unless the legislature changes the applicable law, we are bound by *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971), to uphold any common-law marriage proven to be valid.

### III

In its original order, the trial court directed the parties to contribute $3,000 each month to the support of their children, with Paul to pay $2,000 and Margaret $1,000. Paul now maintains that the court abused its discretion in failing to apply this same two-to-one ratio (based on the approximate ratio between Paul's and Margaret's monthly net incomes) in its revised order. We disagree.

This case is different from one in which a court modifies a support order on the basis of changed circumstances. In that situation any increase or decrease in the amount of support payments must be based on a showing of a material change in either the needs of the children or the ability of one or both parents to pay; "the decree is not subject to modification as a procedural means for reviewing the equities of the prior decree." *Hamilton v. Hamilton,* 247 A.2d 421, 423 (D.C.1968) (citation omitted). Even so, the trial court has "considerable discretion" in modifying a prior support

---

**2.** There is one special rule on proving a common-law marriage in the District of Columbia. "The best evidence of an express agreement [to be husband and wife] is the testimony of the parties." *United States Fidelity & Guaranty Co. v. Britton, supra,* 106 U.S.App.D.C. at 61, 269 F.2d at 252 (footnote omitted). Therefore, when one of the parties to the alleged marriage asserts its existence and testifies, he or she must affirmatively state that there was such an agree-

ment. If such testimony is not presented, evidence of cohabitation, "even though followed by reputation, will not justify an inference of mutual consent or agreement to be married." *Id.; accord, McCoy v. District of Columbia, supra,* 256 A.2d at 910. This requirement was met in the instant case. Margaret East, who asserted the existence of a common-law marriage, testified that there was an express agreement to be married.

order, *Wood v. Wood,* 360 A.2d 488, 491 (D.C.1976), though *Hamilton* teaches that that discretion should be cautiously exercised.

■ In this case, we conclude, the strictures of *Hamilton* do not apply. Because the trial court's original order was based in part on incorrect financial information, there was no reason for it to adhere to the same formula for computing child support payments after the correct financial data were provided. We have no difficulty in allowing the trial court, upon discovering that the factual basis of its prior order was inaccurate, to reconsider the entire issue of support *de novo.* Pertinent case law gives the court "broad discretion" to determine child support payments. *Benvenuto v. Benvenuto,* 389 A.2d 795, 798 (D.C.1978). We see no reason to limit that discretion when the court discovers that, in making a prior decision, it lacked some of the pertinent facts. On the present record, we find no abuse of the trial court's broad discretion. *See, e.g., Cefaratti v. Cefaratti,* 315 A.2d 142, 145 (D.C.1974).

*Affirmed.*