Thomas I. COATES, Appellant,

v.

Cora L. WATTS, Appellee.

No. 91–CV–1403.

District of Columbia Court of Appeals.

Argued Jan. 29, 1993.
Decided March 16, 1993.

· Ronald Gilchrist, for appellant.

Edward Greensfelder, Jr., with whom Julia A. Thompson was on the brief, for appellee.

Before TERRY, STEADMAN and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

Coates appeals from an order granting summary judgment in favor of Cora L. Watts, decedent Ruby McCall's surviving sister and personal representative, in her action for possession of Ms. McCall's home at 6116 Eastern Avenue N.E. Coates declined to vacate the premises after Ms. McCall's death, claiming that he was Ms.

McCall's common law husband, and that he was therefore entitled to a possessory dower interest in the property. The trial judge held, largely on the basis of Coates' own deposition testimony, that Coates and Ms. McCall had never entered into a common law marriage. The judge further held that Coates could not claim an interest in the property because he had failed to renounce a bequest made to him in Ms. McCall's will, such a renunciation being a prerequisite to a claim for dower. D.C.Code § 19–113 (1989). On appeal, Coates reiterates his contentions in the trial court. We affirm.

## I.

The record before the trial court on the motion for summary judgment reveals that Coates moved into Ruby McCall's home some time after the death of her husband in 1971, but before his own divorce became final in 1976. Coates testified on deposition that, following his divorce, he asked Ms. McCall to marry him, but that Ms. McCall refused because marriage would jeopardize her continued entitlement to a benefit check which she was receiving as a result of her late husband's death. Coates testified that, over the years, he made further requests to Ms. McCall that she marry him, but that these requests were all refused for the same reason. Coates claimed that Ms. McCall finally agreed in 1990 to marry him the following year, but that she died before the marriage could take place.

Mrs. Watts, Ms. McCall's sister, stated in an affidavit that Ms. McCall had told her that she (Ms. McCall) had no intention of ever marrying Coates.

In opposing the motion for summary judgment, Coates represented (and the documentary evidence showed) that he and Ms. McCall cohabited and maintained joint bank accounts. Coates also produced affidavits from two members of the community who regarded him and Ms. McCall as husband and wife. Coates offered no evidence, however, which could persuade a rational and impartial trier of fact that after his divorce,[1] he and Ms. McCall had ever agreed, in words of the present tense, to be married.

Moreover, he and Ms. McCall conducted their business affairs as single persons rather than as a married couple. Ms. McCall referred to herself as single, or as a widow who had not remarried, in deeds and other documents relating to property transactions, as well as in her tax returns. Similarly, in her will, Ms. McCall referred to Coates as a "friend" and left him a bequest in that capacity.

Coates likewise referred to himself as single on his tax return, in answers to interrogatories in a personal injury case, and in trial testimony. When asked during his deposition why he and Ms. McCall filed their income tax returns as single people, Coates replied that "we [weren't] married, so I didn't tie her name in there." He

---

1. Coates testified that, at the time he moved in with Ms. McCall, "she said I want you and I want you to come and live with me. We as one, that we be as man and wife." He claimed that "I said okay," and moved in with her. *Id.* He further related that he moved in "[b]ecause she asked me to come and live with her, and [make] our home together as long as we both shall live, until death do us part."

These alleged words of present agreement, however, were evidently spoken at a time when Coates was already married, and could not legally agree to marry Ms. McCall. Coates was not divorced until October 22, 1976. He testified in 1991 that he had been living with Ms. McCall as man and wife for twenty years. After some equivocation on the subject, he acknowledged that "I did not receive my divorce until after I moved in." Moreover, he was not sure whether Ms. McCall even knew that he had ever been married, a fact which renders any conten-

tion that there was a valid "present agreement" to marry dubious to say the least.

As the court explained in *United States Fidelity & Guaranty Co. v. Britton*, 106 U.S.App.D.C. 58, 60, 269 F.2d 249, 251 (1959), a common law marriage requires agreement by "parties legally capable of entering into [a marriage] relationship." Moreover,

[c]ohabitation which was meretricious in its inception is considered to have the same character throughout its continuance after the removal of a real or supposed impediment. Cohabitation continued thereafter could not ripen into a common-law marriage unless it was pursuant to a mutual consent or agreement to become husband or wife made after the removal of ... [the] barrier.

*Id.* at 63, 269 F.2d at 254. No reasonable trier of fact could find in this record evidence of an agreement to marry after Coates' divorce removed the initial impediment.

further explained that "we weren't married by law. You know, you can't lie to the government."

## II.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that viewing the pleadings, affidavits and other record materials in the light most favorable to the nonmoving party, the moving party is entitled to the judgment as a matter of law. *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198 (D.C.1991). The test "is essentially the same as that for a motion for a directed verdict". *Id.* at 199. The question before the motions judge was whether any impartial trier of fact could reasonably find by a preponderance of the evidence that Coates was McCall's common law husband. We agree with the trial judge that no reasonable judge or jury could so find.

■ The District of Columbia has long recognized common law marriages. *Hoage v. Murch Bros. Construction Co.*, 60 App. D.C. 218, 50 F.2d 983 (1931). The elements of common law marriage in this jurisdiction are cohabitation as husband and wife, following an express mutual agreement, which must be in words of the present tense. *East v. East*, 536 A.2d 1103, 1105 (D.C.1988).

■ Since ceremonial marriage is readily available and provides unequivocal proof that the parties are husband and wife, claims of common law marriage should be closely scrutinized, especially where one of the purported spouses is deceased and the survivor is asserting such a claim to promote his financial interest. *In re Estate of Fisher*, 176 N.W.2d 801, 805 (Iowa 1970); *Green v. Ribicoff*, 201 F.Supp. 721, 724 (S.D.Miss.1961). The burden is on the proponent to prove, by a preponderance of the evidence, all of the essential elements of a common law marriage. *United States Fidelity & Guaranty Co. v. Britton, supra* note 1, 106 U.S.App.D.C. at 61, 269 F.2d at 252; *East, supra*, 536 A.2d at 1106, *see also* 55 C.J.S. *Marriage*, § 45 at

911 (1948 & Supp.1992), and authorities there cited.

"[W]hen one of the parties to the alleged marriage asserts its existence but either denies or fails to say there was mutual consent or agreement, then mere cohabitation, even though followed by reputation, will not justify an inference of mutual consent or agreement to be married." *Britton, supra*, 106 U.S.App.D.C. at 61, 269 F.2d at 252. Although there is no set formula required for the agreement, the exchange of words must "inescapably and unambiguously impl[y] that an agreement was being entered into to become man and wife as of the time of the mutual consent." *National Union Fire Insurance Co. v. Britton*, 187 F.Supp. 359, 364 (D.D.C.1960), *aff'd*, 110 U.S.App.D.C. 77, 289 F.2d 454, *cert. denied*, 368 U.S. 832, 82 S.Ct. 54, 7 L.Ed.2d 34 (1961).

■ Coates' testimony, if credited, established at most that he and Ms. McCall had, by the end of her life, agreed to be married at an unspecified future time. In light of the authorities cited, this is insufficient to establish the existence of a common law marriage, and the trial judge correctly so held.

## III.

■ The trial court also held that Ms. Watts was entitled to summary judgment on the alternative ground that even if Coates had produced sufficient evidence to support a finding that he was Ms. McCall's common law husband, he failed, within the statutory six-month period, to file a written renunciation with the Probate Division renouncing the bequest made to him by Ms. McCall in her will, electing instead to take his statutory or dower interest in her estate. *See* D.C.Code § 19–113(a) (1989); *Sarbacher v. McNamara*, 564 A.2d 701, 705 (D.C.1989). Coates failed, in his brief, to contest this ground for the trial court's decision, thus effectively conceding it. At argument, Coates maintained for the first time that his filing of a complaint in the Probate Division constituted the written renunciation required by statute. Since he failed to argue the point in the trial court

or in his brief in this court, counsel for Ms. Watts has had no opportunity to respond to it, and we conclude that the issue has not been preserved. Assuming, without deciding, that in this procedural context, the judge's ruling on the renunciation issue is nevertheless reviewable on a "plain error" or "manifest injustice" standard, *cf. D.D. v. M.T.*, 550 A.2d 37, 48 (D.C.1988), § 19-113(a) prescribes a very specific form of renunciation, and there was no "plain error" or "manifest injustice."

### IV.

For the foregoing reasons, the judgment of the trial court is hereby

*Affirmed.*[2]

STEADMAN, Associate Judge, concurring:

Appellee's motion for summary judgment squarely set forth two distinct grounds for summary judgment: first, the failure of proof of a common-law marriage, and second, the failure to comply with the requirements for renunciation of a bequest in order to claim against the will. Appellant's responses to the motion did not address the second argument. The trial court found in favor of the plaintiff on both grounds yet, again on appeal, appellant briefed only the first ground.[1] Accordingly, for the reasons stated in part III of the majority opinion, the trial court's grant of summary judgment can be sustained on that ground alone, *see Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 & nn. 7-8, 104 S.Ct. 2778, 2781 & nn. 7-8, 81 L.Ed.2d 694 (1984) (appellate courts review judgments, not opinions), and I would find it unnecessary

to reach the common-law marriage issue discussed in part II.

---

2. In order to eliminate any misunderstanding which could unnecessarily complicate the pending probate proceedings and cause additional expense for the parties, we have elected to dispose of the appeal on both grounds on which the trial judge relied. In light of our disposition, we do not reach Coates' contention that Ms. Watts' suit for possession should have been consolidated with the proceedings in the Probate Division.

1. To raise an issue for the first time on oral argument is too late, even if properly preserved in the trial court. *See Ramos v. United States*,

569 A.2d 158, 162 n. 5 (D.C.1990) (citing D.C.App.R. 28's requirements that appellant's brief "shall contain," *inter alia,* a statement of issues and "the contentions of the appellant with respect to the issues presented ..." to find that appellants "tardy attempt to raise a Fifth Amendment claim at oral argument [was] unavailing"); *United States v. A Parcel of Land,* 884 F.2d 41, 44 (1st Cir.1989) (argument not made in brief waived, "even though it comprised the main thrust of their oral argument to this court").