Mario SANCHEZ, Appellant,

v.

Angelo D. MAGAFAN, Appellee.

No. 04–CV–1076.

District of Columbia Court of Appeals.

Argued Jan. 31, 2006.

Decided Feb. 16, 2006.

---

Lois R. Goodman, with whom Charles S. Vizzini, Washington, DC, was on the brief, for appellant.

Nat N. Polito, with whom Christine D. Bell, Washington, DC, was on the brief, for appellee.

Before FARRELL and FISHER, Associate Judges, and PRYOR, Senior Judge.

FARRELL, Associate Judge.

Appellant (Sanchez) brought suit against appellee (Magafan), alleging that Magafan had violated the Wage Payment Act, D.C.Code § 32–1301 et seq. (2001) (the Act), by failing to pay him wages Sanchez

had earned pursuant to an oral employment agreement between himself and Magafan. *See id.* § 32–1302 ("Every employer shall pay all wages earned to his employees . . ."). Magafan defended partly on the ground that Sanchez had never been an employee of his—that, at most, he had been an employee of Beta Restaurant, Inc. (a corporation owned by Magafan), which Sanchez had not sued.[1] The trial judge granted summary judgment to Magafan after concluding that Sanchez had presented no triable issue of fact regarding whether Magafan had employed him personally, hence was his "employer" under the Act. We reverse.

## I.

In reviewing the grant of summary judgment, we examine the record independently, employing the same standard of review as the trial judge. The focus of our inquiry is twofold: first, we look to see if the moving party has met its burden of proving that no material fact remains in dispute, and then we also must determine whether the party opposing the motion has offered competent evidence admissible at trial showing that there is a genuine issue as to a material fact. The burden on the nonmoving party is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

*Hill v. White,* 589 A.2d 918, 921 (D.C.1991) (citations and internal quotation marks omitted). In granting summary judgment here, the trial judge explained:

> [Magafan] has met his initial burden, arguing principally that no actionable employment relationship existed be-

tween [Sanchez] and the individual [d]efendant. [Sanchez] has failed utterly to make any meaningful legal counterargument, making [instead] conclusory and legally unsupported allegations and leaving the Court to conclude that he has failed to meet his burden of establishing a genuine and triable issue as to the existence and terms of an employment relationship with [Magafan].

██ This conclusion cannot be sustained. Attached to Sanchez's opposition to the motion for summary judgment, in which he asserted that he had "had a personal contract of employment with . . . Magafan," were record excerpts that included Sanchez's answers to requests for admissions and interrogatories, as well as portions of his deposition. In these materials he asserted essentially the following facts: In November 1999, Sanchez—experienced in restaurant operations—had been introduced to Magafan by the general manager of a restaurant/bar called Au Pied de Cochon, owned by Magafan. Sanchez met with Magafan that month to discuss renovating "Georgetoons," the property next to Au Pied de Cochon; Magafan wanted Sanchez's help with renovating Georgetoons and managing it once it reopened under a new name. Magafan sought to defer payment of a salary to Sanchez until June 1, 2000, but agreed to pay him a lump sum on that date for the previous six months' work at a rate of $2,400 per month. (Magafan explained that he needed to recover his renovation expenses before he could afford to pay Sanchez.) After June 2000, Magafan would begin paying him on a bimonthly basis at the same rate. Sanchez agreed.

---

1. Magafan contended further that Sanchez had not been an employee at all, but rather an independent contractor.

At this meeting, Sanchez "made it very clear to ... Magafan" that he "would not work contingent on the new restaurant ... becoming a success—that [Magafan] personal[ly] was responsible for [his] salary." "[Magafan] agreed." (Sanchez's Answer to Request for Admissions and Interrogatories). More particularly, Sanchez accepted the deferral of his salary

> because I could afford to, at that time, ... but I also ... told him that I didn't want my existence there to have anything to do with that restaurant succeeding because [before renovation] ... it was a dive and no one ... in their right mind would have taken that business thinking they could have turned it over ... starting new again.

> So [Magafan] and I came to the agreement that I would work for [Magafan,] because I didn't want to have any agreement with the restaurant and its success or not. (Sanchez's Deposition.)

In short, Sanchez wanted Magafan "to personally ... pay me," and Magafan replied, "I will take care of you personally. Don't worry .... Those [were] pretty close to his words" (Sanchez's Deposition). Although Sanchez worked for Magafan until November 2000, some eleven months altogether, Magafan made only a single wage payment of $1,000 to him in August 2000.

In his brief, Magafan acknowledges this proffer of evidence but appears to argue that it was incompetent—or legally insufficient—to create triable issues of fact. See Br. of Appellee at 11 ("[T]here is no evidence in the record, *other than Mr. Sanchez's testimony,* that would establish an employment agreement between the parties.") (emphasis added). This does not pass the straight-face test. For Sanchez's testimony to be admissible and sufficient to carry the day at a trial, nothing in law would require it to be corroborated.[2] If a jury were to believe his version of the agreement, that alone would permit it to conclude that Magafan agreed to be "personally responsible for [Sanchez's] salary"—that, in the words of the Act, Magafan was an "individual ... employing any person [*i.e.,* Sanchez] in the District of Columbia," § 32–1301(1) (defining "Employer"), and thus obligated to pay him "all wages earned" from the employment. *Id.* § 32–1302. The issue is one for a jury.

 At oral argument, Magafan asked us to hold that Sanchez's conceded failure to submit with his opposition to the summary judgment motion a statement under Super. Ct. Civ. R. 12–I(k) enumerating disputed material facts suffices, by itself, to sustain the trial judge's ruling.[3] In his brief, however, Magafan did not defend the summary judgment on this ground, never mentioning Rule 12–I(k). *See, e.g., Ramos v. United States,* 569 A.2d 158, 162 n. 5 (D.C.1990); *Coates v. Watts,* 622 A.2d 25, 28 n. 1 (D.C.1993) (Steadman, J., concurring) ("To raise an issue for the first time on oral argument is too late, even if properly preserved in the trial court."). In any event, Magafan overstates the relevant legal principles. It is true that "material factual disputes must be pleaded in accordance with Super. Ct. Civ. R. 12–I(k)

---

2. *See, e.g.,* STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 3.02 (2002) ("Indeed, the testimony of a single witness, which you believe to be the truth, is enough to prove any fact.").

3. The trial judge noted that Sanchez's "Opposition also fail[ed] to include any statement of material facts in dispute as required by Superior Court Civil Procedure Rule 12–I(k)," but, as pointed out earlier, the basis for the grant of summary judgment was the broader conclusion that Sanchez had made only "conclusory and legally unsupported allegations" insufficient to create "a genuine and triable issue" as to his employment by Magafan personally.

and R. 56(e)," *Woodruff v. McConkey,* 524 A.2d 722, 728 (D.C.1987), and equally true that the court is not obliged "to search the record, unaided by counsel, to determine whether summary judgment is proper." *Vessels v. District of Columbia,* 531 A.2d 1016, 1019 (D.C.1987) (citations and quotation marks omitted). But, as we have also held repeatedly, "the failure to file [a Rule 12–I(k)] statement is not necessarily fatal to [an] opposition to summary judgment." *New Econ. Capital, LLC v. New Mkts. Capital Group,* 881 A.2d 1087, 1096 (D.C. 2005) (citations and internal quotation marks omitted). Rather, summary judgment may be entered if an opponent does not "file a Rule 12–I(k) statement *or otherwise enumerate with reasonable precision* the material facts alleged to be in dispute." *EDM & Assocs. v. GEM Cellular,* 597 A.2d 384, 392 n. 14 (D.C.1991) (emphasis added). No doubt, failure to comply with Rule 12–I(k) alone would permit summary judgment if the effect otherwise were to require the trial judge, unaided by counsel, to search a voluminous record for genuine issues of disputed material fact. *See id.* (if, without aid of a Rule 12–I(k) statement, "we were ... to require the judge to search a record of several thousand pages for possible triable issues of material fact, this would surely undermine the purposes of Rule 12–I(k) and 56(c)"); *see also, e.g., Twist v. Meese,* 272 U.S.App. D.C. 204, 208, 854 F.2d 1421, 1425 (1988) ("[A trial] court judge should not be obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make his own analysis and determination of what may, or may not, be a genuine issue of material disputed fact."). But this case does not remotely present that situation. The disputed issue of whether Magafan had employed Sanchez personally or through a (non-defendant) corporation is

uncomplicated;[4] Sanchez's relevant deposition statements and discovery answers were very limited in number; and he attached to his opposition the specific pages, with marked paragraphs, setting forth his version of the agreement summarized above. Although his compliance with the court rules was deficient, it would be unreasonable for us on this record to disregard the evidence he submitted demonstrating a triable issue of fact regarding the identity of his employer.

## II.

 Magafan makes two additional contentions easily answered. First, the agreement as described by Sanchez in his deposition was not too "vague" to be enforced. Although unwritten, it established the duties he was to perform—helping with renovation of "Georgetoons" and managing it when it reopened—and the terms of payment for his services. If a jury finds that Sanchez contracted with Magafan personally, as it fairly may on the record presented so far, the remaining terms of the agreement will "provide[] a sufficient basis for determining whether a breach"—and correspondingly a violation of § 32–1302—"has occurred and for identifying an appropriate remedy." *Rosenthal v. National Produce Co.,* 573 A.2d 365, 370 (D.C.1990). Nor was Magafan entitled to summary judgment on his separate claim that Sanchez was an independent contractor—hence not an "employee" under the Wage Payment Act. "If an employer has the right to control and direct the work of an individual, not only as to the results achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist." *Spirides v. Reinhardt,* 198 U.S.App. D.C. 93, 98–99, 613 F.2d 826, 831–32 (1979) (footnote and citations omit-

---

**4.** Sanchez has raised no issue requiring a possible "piercing of the corporate veil."

ted); *see also, e.g., Beegle v. Restaurant Mgmt., Inc.,* 679 A.2d 480, 485 (D.C.1996). Sanchez's testimony, if it accords with his deposition, would support a finding that Magafan reserved the right to, and did, exercise substantial control over the "means and manner" of Sanchez's job performance. *Id.* at 831.[5]

*Reversed and remanded for trial.*

---

**5.** Not until his reply brief has Sanchez argued in this court that the trial court erred also in rejecting his separate claim under the Minimum Wage Act, D.C.Code § 32–1001 *et seq.* (2001). *See Bell Atlantic–Washington, D.C., Inc. v. Public Serv. Comm'n,* 767 A.2d 262, 265–66 n. 5 (D.C.2001) (claim "waive[d]" on appeal if not included in party's main brief). In any event, Sanchez's "quarrel [is not with the] hourly rate" Magafan had agreed to pay him, *see Klingaman v. Holiday Tours, Inc.,* 309 A.2d 54, 55 (D.C.1973), but with the failure to pay him as such, "on the basis of wages allegedly due for certain hours of work." *Id.* "The issues are thus controlled by the provisions of the wage payment law." *Id.*