## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| SARA CORCORAN, | DOCKET NUMBER |
| Appellant, | DC-0843-22-0380-I-1 |
| v. | |
| OFFICE OF PERSONNEL | DATE: August 15, 2024 |
| MANAGEMENT, | |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Sara Corcoran, Washington, D.C., pro se.

Jane Bancroft and Carla Robinson, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

### FINAL ORDER

¶1 The appellant has filed a petition for review of the initial decision, which affirmed the reconsideration decision of the Office of Personnel Management (OPM) denying her claim for survivor annuity benefits under the Federal Employees' Retirement System (FERS) on the basis that she failed to establish

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

that she was married to the decedent at least 9 months prior to his death. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2 The appellant and the decedent, a Federal employee, were married in a civil ceremony in Arlington, Virginia on May 29, 2020. Initial Appeal File (IAF), Tab 10 at 108. The decedent passed away on June 14, 2020. Id. at 109. On August 12, 2020, the appellant submitted an application for death benefits to OPM. Id. at 102-07, 113-18. On November 23, 2020, OPM issued an initial decision denying the appellant's application, concluding that she was not entitled to survivor benefits because she and the decedent were not married for at least 9 months before the decedent's death.[2] Id. at 110; see 5 U.S.C. §§ 8441(1)(A),

---

[2] As the appellant correctly notes in her petition for review, OPM's initial decision incorrectly identifies that her application for a survivor annuity was under the Civil Service Retirement System (CSRS), instead of under FERS. Petition for Review (PFR) File, Tab 3 at 6 n.2, IAF, Tab 10 at 110; see IAF, Tab 10 at 113-18, 137-39. Although OPM's reconsideration decision also incorrectly identifies the statutory provisions for CSRS, the administrative judge's prehearing order and the initial decision correctly identify the statutory provisions for FERS survivor benefits as applicable in this case.

8442(b), (e); 5 C.F.R. § 843.303(a)(1). The appellant requested reconsideration of OPM's decision. On March 3, 2022, OPM requested additional information from the appellant in order to assess her application. IAF, Tab 9 at 7. After considering the appellant's additional documentation, OPM issued a reconsideration decision dated April 7, 2022, denying the appellant's request for a survivor benefit, determining that based on their May 29, 2020 civil marriage in Virginia, she and the decedent had not been married for at least 9 months prior to the decedent's death, as required by Federal statute for entitlement to survivor benefits. IAF, Tab 9 at 5. OPM also considered, but rejected, the appellant's argument that she and the decedent had established a common law marriage prior to the date of their civil marriage ceremony, determining that the Commonwealth of Virginia (the jurisdiction where the appellant identified that the decedent resided prior to his death) does not recognize common law marriages unless they were validly established in a state that recognizes common law marriages. *Id.* at 6.

¶3    The appellant timely filed the instant appeal challenging OPM's decision and requested a hearing on her appeal. IAF, Tab 1 at 2. In a prehearing order, the administrative judge defined the relevant issue in this appeal as concerning whether the appellant had established her entitlement to FERS survivor benefits and noted that the appellant intended to present evidence demonstrating that she and the decedent had entered into a valid common law marriage in the District of Columbia (D.C.) prior to their May 29, 2020 civil marriage. IAF, Tab 15 at 2-3. After holding the appellant's requested hearing, IAF, Tab 16, Hearing Recording, the administrative judge issued an initial decision affirming OPM's reconsideration decision denying the appellant's application for survivor benefits, IAF, Tab 18, Initial Decision (ID) at 9. Specifically, the administrative judge determined that the appellant failed to establish that she and the decedent had created a valid common law marriage in D.C. prior to their May 2020 civil

---

IAF, Tab 15 at 1, Tab 18, Initial Decision (ID) at 3-4.

marriage in Virginia. ID at 4-9. Because she concluded that the appellant and the decedent had not been married for 9 months prior to the decedent's death, the administrative judge determined that the appellant was not a "widow" for the purposes of entitlement to FERS survivor benefits under 5 U.S.C. §§ 8441(1)(A) and 8442(b) and affirmed OPM's decision denying her application. ID at 3-4, 9.

¶4 The appellant has filed a petition for review and has provided a copy of the hearing transcript with her petition for review. Petition for Review (PFR) File, Tab 3. The agency has filed a response in opposition to the petition for review. PFR File, Tab 6.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶5 On review, the appellant argues that the administrative judge erred by misapplying D.C. law and that she satisfied the requirements for establishing that she and the decedent created a valid common law marriage in D.C. more than 9 months prior to the decedent's death. PFR File, Tab 3 at 5-20. To that end, the appellant argues that the administrative judge erred by concluding that there was insufficient evidence that she and the decedent formed an express mutual agreement to be married on a date prior to the date of their civil marriage, which is one of the elements required to form a common law marriage in D.C. *Id.* at 13-16.

¶6 To support her argument, the appellant points to her unrebutted hearing testimony stating that she and the decedent had a conversation in December 2018 wherein they both agreed that they considered themselves to be husband and wife. *Id.* at 13-15. She also argues that the fact that she was unable to pinpoint an exact date on which she and the decedent agreed to be married was not dispositive in finding a lawful common law marriage under D.C. law, and that the administrative judge erred by indicating otherwise. *Id.* at 15-16. Finally, she argues that the administrative judge erred by discounting the testimony from other witnesses showing that she and the decedent regularly referred to each other as

"husband," "hubby," "wife," and "wifey," as merely "terms of endearment" rather than as evidence that she and the decedent held themselves out as being married. *Id.* at 16-19.

Applicable legal standard

¶7     An individual seeking retirement benefits bears the burden of proving her entitlement to those benefits by preponderant evidence. *Cheeseman v. Office of Personnel Management*, 791 F.2d 138, 140-41 (Fed. Cir. 1986); 5 C.F.R. § 1201.56(b)(2)(ii).  Pursuant to 5 U.S.C. § 8442(b)(1), a "widow or widower" of a Federal employee who dies while still in duty status after completing certain minimum lengths of service is entitled to a basic employee death benefit and a survivor annuity under FERS.  *Donati v. Office of Personnel Management*, 106 M.S.P.R. 508, ¶ 10 (2007) (stating that, to be entitled to receive a FERS survivor annuity under 5 U.S.C. § 8442(b), the appellant must establish that she is the "widow" of the decedent), *appeal dismissed*, 329 F. App'x 265 (Fed. Cir. 2009); *Charmack v. Office of Personnel Management*, 93 M.S.P.R. 667, ¶ 10 (2003) (observing that, if an employee dies after completing at least 18 months of civilian service creditable under FERS and is survived by a widow or widower, the widow or widower is entitled to death benefits under 5 U.S.C. § 8442(b)(1)); *see also* 5 C.F.R. §§ 843.309-843.310 (implementing the death benefits set forth at 5 U.S.C. § 8442(b)(1)).

¶8     The statutory definition of "widow" is "the surviving wife of an employee . . . who—(A) was married to him for at least 9 months immediately before his death; or (B) is the mother of issue by that marriage."[3]  5 U.S.C. § 8441(1).  The statute does not further define "marriage" or "wife."  5 U.S.C.

---

[3] Pursuant to 5 U.S.C. § 8442(e), a widow is not required to prove that they satisfied the 9-month marriage requirement if the decedent's death was "accidental."  *See* 5 C.F.R. § 843.303(d)(1) (explaining the circumstances in which a death would be deemed accidental for the purpose of satisfaction of the 9-month marriage requirement). Although the administrative judge did not make any findings on this point, the appellant does not appear to assert that the decedent's cause of death was accidental, as defined at 5 C.F.R. § 843.303(d)(1).  IAF, Tab 10 at 109.

§ 8441. When the question of marriage is in doubt, OPM's regulations refer to state law for resolution. *See Donati*, 106 M.S.P.R. 508, ¶ 6. To that end, OPM's implementing regulations define "marriage" as "a marriage recognized in law or equity under the whole law of the jurisdiction with the most significant interest in the marital status of the employee[.]" 5 C.F.R. § 843.102; *see Charmack*, 93 M.S.P.R. 667, ¶ 11. Additionally, the Board has held that "[a] common-law marriage is given effect under [F]ederal law retirement statutes if it is recognized under the relevant state law and meets the 9-month duration requirement." *Moore-Meares v. Office of Personnel Management*, 105 M.S.P.R. 613, ¶ 5 (2007). A party seeking to prove the elements of a common law marriage may do so through either direct or circumstantial evidence. *Id.*, ¶ 6.

¶9        Here, there appears to be some dispute concerning which jurisdiction has the most significant interest in the marital status of the decedent. OPM determined in its reconsideration decision that the appellant and the decedent had not created a valid common law marriage in the Commonwealth of Virginia. IAF, Tab 1 at 19. In her appeal to the Board, the appellant argued that she and the decedent cohabited in D.C. and had created a valid common law marriage in D.C. that Virginia would recognize, and that OPM improperly narrowed the scope of her claim by only considering whether she had created a common law marriage in Virginia. IAF, Tab 1 at 16 n.1, Tab 14 at 5. In the initial decision, the administrative judge determined that the decedent and the appellant cohabited in both Virginia and D.C. from approximately January 2019 until the decedent's death, and analyzed the appellant's claim that she and the decedent created a valid common law marriage in D.C. ID at 4-9.

¶10        Because there is no dispute that the appellant and the decedent were not married for at least 9 months prior to the decedent's death based on the date of their civil marriage, and because Virginia law does not allow for the creation of common law marriages within the Commonwealth and instead only recognizes common law marriages validly created in other states, the appellant's potential

entitlement to a survivor annuity benefit will ultimately turn on whether she can establish that she and the decedent created a common law marriage in D.C. *See Farah v. Farah*, 429 S.E.2d 626, 629 (Va. App. 1993); *Offield v. Davis*, 40 S.E. 910, 914 (Va. 1902). Accordingly, we will assume for the purposes of this appeal, as it appears the administrative judge did, that D.C. is the jurisdiction with the most significant interest in the marital status of the decedent and apply the laws of D.C. as the applicable state law for assessing the appellant's claim.

¶11    D.C. law has long recognized common law marriages created in the District. *U.S. Fidelity & Guaranty Co. v. Britton*, 269 F.2d 249, 251 (D.C. Cir. 1959) (citing *Hoage v. Murch Bros. Const. Co.*, 50 F.2d 983 (App. D.C. 1931)). To establish a common law marriage in D.C., the parties must establish cohabitation following an express mutual agreement, which must be in words of the present tense, to be permanent partners with the same degree of commitment as the spouses in a ceremonial marriage. *Gill v. Nostrand*, 206 A.3d 869, 875 (D.C. 2019). Proof of cohabitation alone will not suffice to prove the existence of a common law marriage. *Bandsa v. Wheeler*, 995 A.2d 189, 198 (D.C. 2010) (citing *Coates v. Watts*, 622 A.2d 25, 27 (D.C. 1993)) "Although there is no set formula required for the [express mutual] agreement, the exchange of words must inescapably and unambiguously imply that an agreement was being entered into to become [permanent partners with the same degree of commitment as the spouses in a ceremonial marriage] as of the time of the mutual consent." *Gil*, 206 A.3d at 875 (quoting *Coates*, 622 A.2d at 27). An agreement "to be married at an unspecified future time . . . is insufficient to establish the existence of a common law marriage" under D.C. law. *Coates*, 622 A.2d at 27. Indeed, "[b]eing engaged by itself, does not constitute a common law marriage, but rather may signify an intention to marry," and may, in fact, "tend[] to suggest the opposite by showing that the parties, for whatever reason, were not ready to be legally married" at that time. *Cerovic v. Stojkov*, 134 A.3d 766, 776 (D.C. 2016); *Bansda*, 995 A.2d at 199.

¶12    However, the fact that a couple decided to have a formal wedding ceremony is not conclusive evidence that they did not consider themselves to already be married. *Cerovic*, 134 A.3d at 776. What the proponent of a common law marriage that precedes a ceremonial marriage must ultimately show is that there has been "cohabitation, as husband and wife, following an express mutual agreement, which must be in words of the present tense." *Id.* (quoting *John Crane, Inc. v. Puller*, 899 A.2d 879, 919 (Md. Ct. Spec. App. 2006)). Courts view with caution claims of common-law marriage. *Dickey v. Office of Personnel Management*, 419 F.3d 1336, 1340 (Fed. Cir. 2005). "Since ceremonial marriage is readily available and provides unequivocal proof that the parties are husband and wife, claims of common-law marriage should be closely scrutinized, especially where one of the purported spouses is deceased and the survivor is asserting such a claim to promote his financial interest." *Id.* (quoting *Coates*, 622 A.2d at 27). "In order to constitute a common-law marriage, both spouses must intend and expressly covenant to enter into a permanent relationship of husband and wife." *Id*. Finally, the proponent of a common law marriage that precedes a ceremonial marriage between the same two individuals is required to establish all of the essential elements of her claim by a preponderance of the evidence. *Cerovic*, 134 A.3d at 776.

<u>The administrative judge correctly concluded that the appellant failed to establish that she and the decedent created a common law marriage at least 9 months before the decedent's death.</u>

¶13    In determining that the appellant failed to prove that she and the decedent formed a common law marriage in D.C. prior to the date of their civil marriage ceremony in Virginia, the administrative judge considered the documentary evidence and the unrebutted testimony from the appellant, her mother, a long-time friend, and the appellant and decedent's mechanic regarding their perceptions of the nature of the relationship between the appellant and the decedent. ID at 5-9. After considering all of the provided evidence, the administrative judge found

that the appellant established that she and the decedent cohabited in both Virginia and D.C. from approximately January 2019 until the decedent's death on June 14, 2020, but failed to establish that she and the decedent had cohabitated in D.C. during that time as husband and wife, until they were ceremonially married on May 29, 2020.  ID at 6.

¶14      In making these findings, the administrative judge cited as persuasive the fact that the appellant was unable to identify a particular time or conversation in which she and the appellant expressly agreed that they were presently husband and wife.  ID at 6.  She credited the appellant's testimony that she and the decedent at times referred to each other as "husband, "wife," "hubby," and "wifey," but she nevertheless declined to credit her testimony that their use of these terms represented a mutual agreement to presently be married, as opposed to expressions of endearment.  ID at 7.  Instead, the administrative judge determined that the overwhelming evidence suggested that the appellant and the decedent became engaged and had a future intention to be married at some time prior to May 2020, which came to fruition with their civil marriage ceremony on that date.  ID at 7-8.

¶15      The administrative judge also credited testimony from the appellant's witnesses concerning their perceptions of the nature of the relationship between the appellant and the decedent but determined that the testimony was consistent with her finding that, prior to their May 2020 civil marriage ceremony, the appellant and the decedent possessed only a future intention to be married at some later date.  ID at 6-8.  Specifically, the administrative judge credited testimony from the appellant's long-time friend stating that she first learned of the appellant's engagement to the decedent on March 17, 2019, but that she knew that the decedent was going to propose to the appellant and that he discussed how he wanted to marry her prior to the engagement.  ID at 8; PFR File, Tab 3 at 106-08 (hearing testimony of appellant's mother).  The administrative judge also credited corroborating testimony from the appellant's mother stating that the decedent had

"asked for her [daughter's] hand in marriage" in January 2019, as supporting her conclusion that the appellant and the decedent became engaged in January or February 2019 with the future intention to be married. PFR File, Tab 3 at 135-36 (testimony of appellant's mother). In making these credibility findings, the administrative judge cited to the Board's decision *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (setting forth the factors relevant to resolving credibility issues).

¶16    The Board must defer to an administrative judge's credibility determinations when she relies "expressly or by necessary implication" on a witness's demeanor at the hearing. *Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1372-73 (Fed. Cir. 2016). The Board "is not free to overturn an administrative judge's demeanor-based credibility findings merely because it disagrees with those findings." *Haebe v. Department of Justice*, 288 F.3d 1288, 1299 (Fed. Cir. 2002). Rather, the Board may overturn credibility-based determinations only when it has "sufficiently sound" reasons for doing so. *Id.* at 1301. As a result of the "sufficiently sound" requirement for overturning an administrative judge's credibility determinations, the Board has established for administrative judges guidance relating to credibility determinations. *See Hillen*, 35 M.S.P.R. at 458; *see also Haebe*, 288 F.3d at 1301. Here, the administrative judge made specific and explained credibility findings, citing to *Hillen* repeatedly throughout the initial decision, and we see no reason to disturb those findings on review.[4]  ID at 6-9.

---

[4] Additionally, although the appellant argued that the onset of the COVID-19 pandemic delayed her ability to obtain a ceremonial marriage, which the administrative judge credited, the marriage certificate included in the record issued by Fairfax County Circuit Court identifies that the certificate was issued on May 11, 2020, and the ceremony occurred on May 29, 2020. IAF, Tab 10 at 108. The appellant initially testified that she and the decedent intended to marry in late 2019 but that their plans were delayed by the onset of the COVID-19 pandemic, among other things. PFR File, Tab 3 at 38 (hearing testimony of the appellant). The appellant did not clarify in her testimony or on review how the COVID-19 pandemic, which did not begin to cause significant closures of state and local offices and business until March 2020, prevented her and the decedent from marrying in late 2019 or early 2020. Additionally, it appears

¶17 Regarding the appellant's specific argument that under D.C. law, the existence of the required mutual agreement may be inferred based on the "character and duration of" the cohabitation, and that the administrative judge erred by failing to adequately consider this fact, we find no error in the administrative judge's findings. PFR File, Tab 3 at 15-17; *see Jackson v. Bowen*, 690 F. Supp. 58 (D.D.C 1998); *Mesa v. U.S.*, 875 A.2d 79, 83 (D.C. 2005). To support her argument, the appellant cites the U.S. District Court for the District of Columbia's decision in *Jackson v. Bowen* as instructive. However, the facts of *Jackson* are distinguishable from those in this case.

¶18 As the appellant correctly notes, the court in *Jackson* cited to the fact that the appellant and the decedent in that case referred to each other as "husband and wife," and that they were known as such by their friends, family members, and neighbors, and acknowledged that the "character and duration" of their cohabitation could be considered in inferring that a common law marriage existed. *Jackson*, 690 F. Supp. at 59-62. However, the court also considered other evidence as persuasive in reaching its decision, including the following: the extensive and lengthy nature of their period of cohabitation, observing that they cohabited continuously from August 1969, until the decedent's placement in a VA hospital where he died on August 30, 1980, a period of 11 years; the fact that the decedent gave the appellant an engagement ring in August 1969, and a wedding

---

that the Fairfax County Circuit Court responsible for issuing marriage certificates was only closed for a brief period between March 17, 2020, and April 14, 2020, at which time it began reissuing marriage certificates virtually. *See Updated and Amended Memorandum COVID-19 Contingency/Action Plan Fairfax County Circuit Court Ordered Procedures*, *available at*: http://www.courts.state.va.us/news/items/covid/2020_0318_fairfax_cc.pdf (last visited Aug. 15, 2024) (initiating the Fairfax County Circuit Court's COVID-19 Contingency/Action Plan, effective March 17, 2020, which suspended most scheduled in-person hearings through May 26, 2020); *"Marriage Licenses Go Virtual," Fairfax County, Virginia Office of Public Affairs*, *available at:* https://www.fairfaxcounty.gov/publicaffairs/marriage-licenses-go-virtual (last visited Aug. 15, 2024) (implementing a virtual marriage license system in the Fairfax County Circuit Court, effective April 14, 2020, which permitted applicants to apply for marriage licenses online and receive them by mail).

ring in November 1969, and that although they originally intended to have a ceremonial marriage, they never ended up doing so prior to the decedent's death; and the fact that the appellant and the decedent filed two joint tax returns under "married filing joint returns" status prior to the decedent's death. *Jackson*, 690 F. Supp. at 60-64.

¶19    In the instant case, by contrast, the evidence concerning the character and duration of the appellant's and decedent's cohabitation is less persuasive than that of *Jackson* because the decedent and the appellant here cohabited for approximately 18 months before the decedent's death, they both maintained their existing residences from before they began cohabiting, and they split their cohabitation between D.C. and Virginia. PFR File, Tab 3 at 34-35, 61-63, 67-69 (hearing testimony of the appellant); *see Jackson*, 690 F. Supp. at 59. Additionally, unlike in *Jackson*, the appellant and the decedent in the instant case did ultimately complete a ceremonial marriage, they both filed separate tax returns in 2019, and the first joint tax return they filed was in 2020, after the date of their ceremonial marriage. PFR File, Tab 3 at 43-44; IAF, Tab 9 at 22-24, 38-50.

¶20    Additionally, the court in *Jackson* was evaluating the common law marriage claim in the context of an application for widow's insurance benefits from the Social Security Administration, pursuant to 42 U.S.C. § 402(e), which prioritizes certain types of evidence and appears to apply a different standard of review than that applicable to the civil service retirement statutes. *Compare Jackson*, 690 F. Supp. at 58, 62; 20 C.F.R. § 404.726(b)(2) (identifying types of "preferred" evidence for establishing a common-law marriage under Social Security Administration regulations, such as signed statements from blood relatives), *with Allen v. Office of Personnel Management*, 77 M.S.P.R. 212, 216 (1998) (determining that payments of money from the civil service retirement fund are limited to those authorized by statute and that the requirements of eligibility for a

retirement benefit are substantive legal requirements that allow for no administrative discretion by OPM or the Board.)

¶21    As the administrative judge observed, the record evidence clearly indicates that the appellant and the decedent expressed their mutual love and intention to marry prior to their May 19, 2020 civil marriage ceremony.  ID at 7. Nevertheless, we agree with her finding that this evidence in insufficient to establish that the appellant and the decedent formed a common law marriage in D.C prior to the May 19, 2020 date of their civil marriage ceremony, and consequently, the appellant has failed to establish that she meets the 9-month marriage requirement set forth in 5 U.S.C. § 8441(1) for entitlement to a FERS survivor benefit.  While we sympathize with the appellant's circumstances, the Government cannot be estopped from denying benefits not otherwise permitted by law, and the Board lacks the authority to provide the appellant with an effective remedy under these circumstances.  *See Office of Personnel Management v. Richmond*, 496 U.S. 414, 416, 423-24, 434 (1990); *see also Pagum v. Office of Personnel Management*, 66 M.S.P.R. 599, 601 (1995) (stating that when an applicant does not meet the requirements for an annuity, OPM cannot be required to pay the annuity).  For the foregoing reasons, we deny the petition for review and affirm the initial decision denying the appellant's application for FERS survivor benefits.

## NOTICE OF APPEAL RIGHTS[5]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations<br>
Equal Employment Opportunity Commission<br>
P.O. Box 77960<br>
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations<br>
Equal Employment Opportunity Commission<br>
131 M Street, N.E.<br>
Suite 5SW12G<br>
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6] The court of appeals must <u>receive</u> your petition for

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:
               *Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.